NORMAN K.K. LAU
Attorney at Law
A Law Corporation

NORMAN K.K. LAU 1795
820 Mililani Street, Suite 701
Honolulu, Hawaii 96813
Telephone No. (808) 523-6767
Facsimile No. (808) 523-6769
Email: norm@normlau.com

ROBERT S. SOLA, P.C.
Attorney at Law

ROBERT S. SOLA (*pro hac vice*, OSB No. 84454)
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
Telephone No. (503) 295-6880
Facsimile No. (503) 291-9172
Email: rssola@msn.com

Attorneys for Plaintiff
GERALD H. ELLER

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 0 6 2006

at 3 o'clock and 25 min, PM
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GERALD H. ELLER,<br><br>        Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation; TRANS UNION LLC, a foreign corporation; and BANK ONE CORPORATION, a foreign corporation,<br><br>        Defendants. | CASE NO. CV 04-00174 DAE-KSC<br><br>PLAINTIFF'S REPLY TO EXPERIAN INFORMATION SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL; CERTIFICATE OF SERVICE<br><br>Hearing Date: January 9, 2006 at 9:30 a.m.<br>Magistrate Judge Kevin S. C. Chang<br>Presiding Judge David Alan Ezra |

PLAINTIFF'S REPLY TO EXPERIAN INFORMATION SOLUTIONS, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL



ORIGINAL

Most of Experian's opposition memorandum consists of arguments relating to protecting the confidentiality of the information plaintiff seeks. Only in a few instances does Experian argue that the information sought is not discoverable. Yet the Court has already entered a protective order which limits the disclosure of confidential information to the parties, witnesses and experts. Moreover, the protective order prohibits anyone from using the information for any business, commercial or competitive purpose. Furthermore, at Experian's request, the parties have substantially agreed on an order providing for additional protection.[1]

Experian's crimped view of discovery is based on its mistaken belief that the case is only about five disputed accounts that did not belong to plaintiff. The case is about much more. First, there were at least six accounts reported by Experian that did not belong to plaintiff. (Experian ignores the Unipac account.) These were identified by plaintiff in his Supplemental Response to Interrogatory No. 5. Second, Experian falsely reported that plaintiff's Citibank account was disputed by him when that was not accurate. Third, Experian reported numerous items of inaccurate personal information including false names, addresses, social security number and employers.[2] The errors on the Citibank account and the incorrect items of personal information were also disclosed to Experian in plaintiff's Supplemental Response to Interrogatory No. 5. Experian's D/R Log indicates that it investigated or corrected 22 separate pieces of information based on plaintiff's March 2002 dispute. There were additional disputes and other incorrect items that plaintiff did not dispute. So Experian has long been aware that this case is about more than five accounts. Experian's focus on five items ignores the majority of plaintiff's case, including the reinsertion of the name Jerry Willard on plaintiff's report in 2004.

---

[1] The only remaining issue on amending the protective order is the extent to which plaintiff may see the documents marked "Confidential-Plaintiff's Attorney's Eyes Only." Experian's proposed order would not allow plaintiff to see any of the documents, even those containing his own credit or personal information.

[2] Experian is also incorrect in stating that all the inaccurate personal information was corrected in response to plaintiff's March 2002 dispute. Plaintiff had to send additional disputes to get all the items corrected.

2

LONG ADMIN

Experian's memorandum reinforces plaintiff's argument that the entire Long Admin report is discoverable. Experian admits that the regular Admin only includes information that is in plaintiff's file at the time the report is created. Declaration of David Browne, ¶ 5. ("Browne Decl."). Plaintiff's case concerns incorrect credit reporting from 1999 to the present. Moreover, the regular Admin report from 2004 is clearly incomplete as it does not include the name Jerry Willard although that name and several variations of it had been reported by Experian.

Experian admits that the Long Admin includes a substantial amount of information that is not in the regular Admin report. The Long Admin includes tradeline "array" fields which show the status of each tradeline, the date the status information was recorded and the period of time for which the status information applied to the account. Browne Decl. ¶ 15. This information is very important to plaintiff's case. For example, two of plaintiff's claims are that Experian reported the Citibank account as disputed, which was incorrect, and that Experian continued to report the account as disputed after Citibank told Experian it was not disputed. The tradeline "array" fields include such status information. The Long Admin also includes information regarding the Unipac account which was on plaintiff's report although it did not belong to him.[3]

The Long Admin report also includes "SCORE" fields which contain identification information. Browne Decl. ¶ 16. Much of plaintiff's case involves the incorrect reporting of identification information. Therefore, the Long Admin report is reasonably calculated to lead to discovery of admissible evidence.

Experian argues that there will not be any "SCORE" information for the name rows associated with the disputed accounts because that information has been deleted and updated. Again, Experian ignores the fact that the case involves more than just the five disputed accounts. The identification information is discoverable because identification information relating to Willard (such as a name or address) may cause additional Willard information to be placed in

---

[3] Experian would redact all information on the Unipac account under the mistaken belief it is not relevant.

3

plaintiff's file because it increases the likelihood of matching identifiers. All the identification information reported to Experian is crucial in this case because it will determine the extent to which information apparently matched plaintiff's identification information resulting in incorrect information going on his credit report. Moreover, because the matching system relies on numerous pieces of identification, that are accorded different "weights", plaintiff must know all the different pieces of identification, and how they are weighed.

Experian's plan to redact all but the five disputed accounts also ignores the fact that the Long Admin may contain information that plaintiff never disputed because he was not aware of that information. Over the years, Experian sold many reports to creditors. Plaintiff does not have these credit reports. He has only the few reports that he requested from Experian between 1999 and 2005. So plaintiff does not actually know all of the information Experian reported about him, or the information creditors reported to Experian. The Long Admin report contains the most comprehensive record of the information in plaintiff's file over the multi-year period involved in this lawsuit. Every additional false item in plaintiff's file is additional evidence that Experian did not follow procedures to assure maximum possible accuracy.

Experian is producing the entire Long Admin reports to other consumers who have brought FCRA cases against Experian. Declaration of Leonard Bennett, ¶¶ 8 and 9. ("Bennett Decl."). The Federal Court in Pennsylvania has also ordered production of the Long Admin. Declaration of Mark Mailman, ¶ 3. Consumers in Hawaii should be able to obtain this same vital information when asserting their rights under the FCRA as consumers in other states.

Experian's employee, David Browne, admits he uses the Long Admin in some cases. He also admits that Experian and *its counsel in this case* have the entire Long Admin report on plaintiff. Brown Decl. ¶ 14. Experian and its counsel should not be allowed to use this document but then refuse to produce it to plaintiff.

Mr. Browne also tries to argue his belief that this document would not be useful to plaintiff. Mr. Browne is merely an Experian employee. He is not an attorney nor has he ever represented a consumer bringing a claim for violation of the FCRA. He does not know what

4

information is useful in litigating such a case. However, experienced attorneys who specialize in this area such as Mr. Bennett confirm that the type of information in the Long Admin and the Admin Handbook are "critical" and "essential" for anyone pursuing this type of case. Bennett Decl. ¶¶ 6 and 11.

ADMIN HANDBOOK

Experian's witness in another case, Kathy Centanni, testified that the Admin Handbook is used to understand and decode an Admin report. Bennett Decl. ¶ 7. Experian has produced two Admin reports. Plaintiff is entitled to the Admin Handbook so plaintiff can fully understand those reports. The Admin Handbook is essential for plaintiff to pursue his case. Bennett Decl. ¶ 11. The confidentiality of the Admin Handbook is assured under the protective order, and the additional protections plaintiff has agreed to.

Plaintiff has attached portions of the transcript of a hearing pertaining to production of the Admin Handbook in Beck v. Equifax Information Services LLC, et al. Ex. 7 to Decl. of Robert S. Sola. In Beck, Experian made the same argument that it should only produce portions of the Admin Handbook. Ex. 7, p. 57, l. 8-21. The Court rejected that argument stating that the consumer should be able to learn about all the codes and procedures because they may include things that should have been done but were not. Ex. 7, p. 57, l. 22-23; p. 58, l. 4-7, 10-16.

MATCHING SYSTEM

Experian's matching system is one of the procedures it employs to comply with the FCRA requirement that it follow reasonable procedures to assure maximum possible accuracy of the information it reports. FCRA, § 1681e(b). The focus of plaintiff's claim for violation of § 1681e(b) must be on those procedures. Guimond v. Trans Union Credit Information Co., 45 F 3d 1329, 1334 (9th Cir. 1995). Experian will defend this case by claiming that its matching system is a reasonable procedure to assure maximum possible accuracy. But it will not let plaintiff learn how it works. This completely prevents plaintiff from exposing the defects in that system. Experian's procedures produced inaccurate credit reports on plaintiff from 1999 through 2005. Plaintiff is entitled to determine how Experian's system works and why it failed to produce

accurate reports. Experian's position is similar to a manufacturer in a product liability case refusing to disclose how the product was made.

Experian argues that it has already provided a detailed description of the matching system in the expert report of David Browne. That is not so. The section in Mr. Browne's report discussing the matching system is attached as Ex. 6 to the Declaration of Robert S. Sola. Mr. Browne states that Experian's matching system uses a "basket" of identifiers which are weighted based on many factors, to determine which credit items to put on a credit report. He does not identify the identifiers. He does not identify how they are weighted. He does not identify the factors used to determine how they are weighted. Ex. 6, p. 16-17.

Mr. Browne states that the system permits variations in identifying information but does not identify which information can have variations and what those variations are. Ex. 6, p. 17.

Mr. Browne also mentions a procedure for dealing with a "mixed file" (when the matching system has failed to assure maximum possible accuracy) stating that a more stringent matching procedure is employed. Again, he does not state what the more stringent procedure is or which pieces of identification must meet this more stringent procedure. Ex. 6, p. 19.

Experian's strategy is to reveal only those portions of its procedures which it believes will help it defend this case and not let plaintiff, the Court or the jury truly evaluate its procedures.

## PROCEDURES FOR PREVENTING REAPPEARANCE OF DELETED INFORMATION

Plaintiff claims that Experian did not have reasonable procedures to prevent deleted information from reappearing on his credit report, as required by the FCRA, § 1681i(a)(5)(C).[4] One procedure is the "soft delete" function. Experian asserts that its soft delete function was not applied to prevent the deleted name of Jerry Willard from reappearing on plaintiff's credit report.

---

[4] Experian, for the first time, now argues that plaintiff did not request documents regarding the reappearance of incorrect information. Plaintiff requested documents concerning preventing information that did not belong to plaintiff from appearing on his credit reports. RFP No. 22. Clearly, a request for documents regarding the appearance of incorrect information includes the reappearance of incorrect information.

6

Experian Opposition Memorandum, p. 21. Therefore, Experian argues the soft delete function is not relevant to this case. Although plaintiff disagrees, if that is Experian's position then it should be precluded from offering any evidence regarding the soft delete function or even that it exists.

Nevertheless, plaintiff is still entitled to discovery regarding the procedures Experian uses to prevent the reappearance of a name that has been deleted.

## DOCUMENTS REGARDING FRAUD PROCEDURES AND FRAUD REPORTS

There is evidence that accounts were opened using plaintiff's social security number without his knowledge. It is also undisputed that Experian was aware that some of the accounts plaintiff was disputing as not belonging to him had been reported to Experian with plaintiff's social security number. Thus, Experian knew or should have known that plaintiff could have been a victim of fraud. This presents the issue whether Experian should have implemented its fraud procedures in addressing the errors on plaintiff's credit reports. Moreover, Experian was well aware of the problem of identity theft in 2002 and would know that when a consumer is claiming that accounts do not belong to him, the consumer may be a victim of identity theft.

Experian argues that the fraud procedures are not relevant because plaintiff did not specifically state he was a victim of fraud when he disputed accounts in 2002. That argument does not hold water. It does not matter that plaintiff did not claim fraud. Many consumers are not aware they are victims of fraud when they find false information on their credit reports and some never learn if there was fraud. What matters is that Experian had information alerting it to the possibility of fraud, both specifically as to accounts opened with plaintiff's social security number, and more generally concerning the prevalence of fraud related to credit accounts.

If Experian has any documents related to National Fraud Database reports concerning plaintiff or Mr. Willard they should be produced because this is additional evidence that Experian was aware of fraud.

## JERRY WILLARD DOCUMENTS

Experian argues that it cannot produce documents from Mr. Willard's credit file because there is no permissible purpose under the FCRA. However, the FCRA provides two avenues for

7

plaintiff to obtain this information. First, § 1681g(a) requires a credit reporting agency to produce all information that the agency has on a consumer regardless of how the information is stored. Experian can also produce them pursuant to a court order, FCRA, § 1681b(a)(1).

Experian asserts that plaintiff is trying to "pry" into Willard's credit file without any basis. Experian's Opposition Memorandum, p. 23. Plaintiff did not mix his information with Willard. Experian did. Moreover, Experian has already published to plaintiff, and the businesses who have received his credit report over the last six years, reams of information about Mr. Willard including his name, addresses, employers, social security number, account numbers, balances, and companies that requested his credit report. It is disingenuous for Experian to now claim it cannot produce documents that will show the extent of mixing between plaintiff and Willard because doing so may disclose some of Willard's information.

POLICY AND PROCEDURE MANUALS

Plaintiff has only requested manuals concerning the procedures relevant to this case. Experian has omitted large portions of several manuals and has only produced the cover and table of contents for others. In his motion, plaintiff pointed out the relevance of many of the omitted sections. Experian now says that it will produce some additional documents but it has not done so. This will be Experian's third "installment" of portions of manuals. Experian should produce the entire manuals. There is a protective order so they will not be used outside this litigation or for any competitive purpose.

Experian has not produced all of the documents related to training and supervision of its employees concerning compliance with the FCRA provisions that plaintiff claims were violated. Experian does not address these issues in its memo. These documents include the database management training material which identifies how data gets put into credit reports and helps Experian review the administration record. The Court in Beck ordered Experian to produce these documents. Ex. 7, p. 63, l. 1-6, 24-25. Plaintiff asks that these documents be produced.

EMPLOYEE SALARY AND INCENTIVE DOCUMENTS

Experian now states that it will provide salary information and "incentive guidelines" for the employees who worked on or handled plaintiff's disputes. Experian Opposition Memorandum, p. 21. Experian does not explain the contents of these documents. Plaintiff requests an order that Experian produce the documents on the compensation system and records of all salaries, bonuses or incentives paid to those employees.

Plaintiff does not seek any confidential, medical or insurance information. In regard to employment records, plaintiff only requests Experian produce records of any discipline, sanction, demotion or other adverse action taken against the employees.

INTERROGATORIES

Experian's responses to Interrogatories Nos. 2, 3, and 4 dealing with the investigations of plaintiff's disputes are not adequate. Experian does not discuss the investigations of the personal information that was disputed. It does not give details regarding investigations of the five disputed accounts, including the content of the information provided to the furnishers. Experian's reference to the documents is insufficient because Experian has not produced all the notices sent to the furnishers, and documents that were produced contain codes that plaintiff cannot understand.

Experian continues to refuse to identify the inaccurate accounts and tradelines it reported as requested in Interrogatory No. 12. Experian argues that it has produced all available information in its file. One purpose of this interrogatory is to eliminate the factual issue as to whether these disputed accounts belong to plaintiff. The information produced by Experian does not provide this information. If Experian will identify the accounts do not belong to plaintiff, it will eliminate those issues, expediting later discovery and the trial.

EXPERIAN'S MOTION FOR PROTECTIVE ORDER

Experian really goes over the top with its claim that every piece of information plaintiff seeks is an invaluable trade secret that cannot be disclosed even with the current protective order. For example, David Browne asserts that the employee incentive and salary information is so

9

sensitive that it is entitled to additional safeguards to protect Experian from competitors. Brown Decl. ¶ 31. In other cases against Experian prosecuted by plaintiff's counsel, Experian's employees have disclosed their salary information without any attempt by Experian to obtain the additional protection it seeks here.

The Ninth Circuit, consistent with the language in Federal Rule of Civil Procedure 26(c), has placed a high burden on a party seeking a protective order. See Foltz v. State Farm, 331 F 3d 1122 (9th Cir. 2003); Philips v. General Motors, 307 F 3d 1206 (9th Cir. 2002); Beckman Industries, Inc. v. International Insurance Co., 966 F 2d 470 (9th Cir. 1992). The Court in Foltz stated:

> "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted. Id. at 1210-11 (citing San Jose Mercury News, 187 F 3d 1096, 1102); see also Beckman, 966 F 2d at 476 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.") (quoting Cipollone v. Liggett Group, Inc., 785 F 2d 1108, 1121 (3d Cir. 1986) (internal quotation marks omitted)); DeFord v. Schmid Prods. Co., 120 FRD 648, 653 (D. Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm")."

The Foltz court also relied on Beckman in holding that the party seeking protection must show "*specific* prejudice or harm now." Foltz, 331 F 3d at 1131 quoting Beckman, 966 F 2d at 476 (emphasis added).

Experian has presented only the kind of broad allegations of harm that are not sufficient to satisfy the Rule 26(c) test. It speculates about potential harm that could result *if there was not a protective order*. There is a protective order. Experian has no basis for not producing all of the requested materials.

Moreover, plaintiff is willing to stipulate to the additional protection that Experian seeks except to the extent that it precludes plaintiff from seeing any of the information subject to the additional protection. Experian repeatedly asserts that it is concerned about information being disclosed to three entities: (1) competitors, (2) criminals who would use it to steal identities, and

(3) credit clinics. Experian stipulated and this Court entered a protective order allowing plaintiff to review any material marked confidential. Plaintiff asks that if the Court amends the existing protective order, it include a provision allowing plaintiff to review the materials.

DATED: Honolulu, Hawaii, January 6, 2006.

ROBERT S. SOLA (pro hac vice)
NORMAN K.K. LAU

Attorneys for Plaintiff
GERALD H. ELLER

NORMAN K.K. LAU
Attorney at Law
A Law Corporation

NORMAN K.K. LAU 1795
820 Mililani Street, Suite 701
Honolulu, Hawaii 96813
Telephone No. (808) 523-6767
Facsimile No. (808) 523-6769
Email: norm@normlau.com

ROBERT S. SOLA, P.C.
Attorney at Law

ROBERT S. SOLA (*pro hac vice, OSB No. 84454*)
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
Telephone No. (503) 295-6880
Facsimile No. (503) 291-9172
Email: rssola@msn.com

Attorneys for Plaintiff
GERALD H. ELLER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GERALD H. ELLER,<br><br>                    Plaintiff,<br><br>     vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation; TRANS UNION LLC, a foreign corporation; and BANK ONE CORPORATION, a foreign corporation,<br><br>                    Defendants. | CASE NO. CV 04-00174 DAE-KSC<br><br>DECLARATION OF ROBERT S. SOLA; EXHIBITS 6 AND 7 |

## DECLARATION OF ROBERT S. SOLA

I, Robert S. Sola, state as follows:

1. I am one of the counsel for plaintiff Gerald H. Eller in this case. I make this declaration based on personal knowledge.

2. Attached as Exhibit 6 is a true copy of pages 1, 16-19 of Defendant Experian's Rule 26(a)(2) Expert Witness Report.

3. Attached as Exhibit 7 is a true copy of pages 1, 56-58, 61-64 and 67 of the transcript of the hearing on Plaintiff's Motion to Compel in Beck v. Equifax Information Services LLC, et al., Case No. 1:05-cv-347 in the District Court of the Eastern District of Virginia, Alexandria Division, on August 16, 2005.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 5, 2006.

*[signature]*
Robert S. Sola