Of Counsel:
WRIGHT & KIRSCHBRAUN
A Limited Liability Law Company
DEBORAH K. WRIGHT          4444
KEITH D. KIRSCHBRAUN       4971
1885 Main Street, Suite 108
Wailuku, HI 96793
Telephone: 808-244-6644
Facsimile: 808-244-1013
Email: WrightKirsch@aol.com

JONES DAY
DANIEL J. McLOON (*pro hac vice*, Cal. Bar. No. 109598)
SCOTT K. BEHRENDT (*pro hac vice*, Cal. Bar No. 200217)
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
Email:      djmcloon@jonesday.com
            skbehrendt@jonesday.com
Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 10 2006

at __1__ o'clock and __30__ min. __ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GERALD H. ELLER,<br><br>Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation, TRANS UNION LLC, a foreign corporation, and BANK ONE CORPORATION, a foreign corporation,<br><br>Defendants. | CIVIL NO. 04-CV-174 DAE KSC<br><br>SUBMISSION OF ORIGINAL DECLARATIONS; DECLARATION OF DAVID A. BROWNE; DECLARATION OF SCOTT K. BEHRENDT; CERTIFICATE OF SERVICE<br><br><br><br>HEARING<br>DATE:   January 9, 2006<br>TIME:   9:30 a.m.<br>JUDGE:  Honorable Kevin S.C. Chang |

**SUBMISSION OF ORIGINAL DECLARATIONS**

Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), by and through its attorneys, WRIGHT & KIRSCHBRAUN, A Limited Liability Law Company, submits the following original documents for filing with the Court: 1) Declaration of David A. Browne (dated December 30, 2005); and, 2) Declaration of Scott K. Behrendt (dated December 30, 2005), facsimile copies of which were attached to Experian's Opposition to Plaintiff's Motion to Compel and Counter-Motion for a Protective Order, filed December 30, 2005.

DATED: Wailuku, Maui, Hawaii; January 9, 2006.

_____
DEBORAH K. WRIGHT
KEITH D. KIRSCHBRAUN

Attorneys for Defendant
EXPERIAN INFORMATION
SOLUTIONS, INC.

Of Counsel:
WRIGHT & KIRSCHBRAUN
A Limited Liability Law Company
DEBORAH K. WRIGHT          4444
KEITH D. KIRSCHBRAUN       4971
1885 Main Street, Suite 108
Wailuku, HI  96793
Telephone:  808-244-6644
Facsimile:   808-244-1013
Email:          WrightKirsch@aol.com

JONES DAY
Daniel J. McLoon (*pro hac vice application pending,*
Cal. Bar No. 109598)
Scott K. Behrendt (*pro hac vice*, Cal. Bar No. 200217)
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone:  213-489-3939
Facsimile:   213-243-2539
E-mail:        djmcloon@jonesday.com
                  skbehrendt@jonesday.com
Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GERALD H. ELLER,<br><br>    Plaintiff,<br><br>  v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation; TRANS UNION LLC, a foreign corporation; and BANK ONE CORPORATION, a foreign corporation,<br><br>    Defendants. | Case No. CV 04-00174 DAE-KSC<br><br>**DECLARATION OF DAVID A. BROWNE** |

## DECLARATION OF DAVID A. BROWNE

I, David A. Browne, being duly sworn, declare and state as follows:

### I.    Background

1.    Since 1996, I have served as Compliance Manager for Experian Information Solutions, Inc. ("Experian"), formerly known as the Information Services Division, TRW Information Systems Group, of TRW Inc. Before that time, I held the same position with TRW in its Information Services Division. I joined TRW Inc. ("TRW") as a system analyst in January 1977, and during my employment with TRW my assignments included redesigning TRW's credit report and adding information to it as well. I also tested some of the changes to the computer system and developed the business rules for some of the changes. I have additionally identified and specified a number of enhancements to the computer systems and procedures used by TRW and Experian over the past 14 years. My current duties include helping to ensure that Experian's computer systems and procedures comply with federal and state credit reporting laws and Experian's requirements for quality. I am fully familiar with the procedures that Experian employs in gathering and storing credit information and in assembling credit reports and consumer disclosures.

LAI-2220650v1

2. Based upon my experience at Experian, I am very familiar with Experian's policies and procedures for the compilation, retention, reinvestigation and disclosure of consumer credit information.

3. I submit this affidavit in support of Experian's Opposition to Plaintiff's Motion to Compel and Counter-Motion for a Protective Order in the above-captioned matter. The facts set forth herein are based upon my personal knowledge, and if I were called upon to testify to them, I could and would competently do so.

## II.    Confidential Documents

### A.    Administrative Report

4. Inquiry/Generation. It is my understanding that Experian has already produced Admin Reports for Plaintiff dated February 17, 2004 (EXP00201-00212) and October 14, 2005 (EXP00236-00249) pursuant to the current protective order in this case.

5. Among other things, the Admin Reports contain the name variations, social security numbers, addresses, and credit accounts appearing in Plaintiff's file at the time the Admin Report was created. For example, by reviewing the Admin Reports, Plaintiff can determine that his Citibank account ending in 2264 was recorded by Experian with the name Gerald H. Eller, with Plaintiff's exact social security number, and a Colorado Springs, Colorado, address. Accordingly, the

Admin Reports are the critical documents for determining whether a mixed file existed, and I understand that those have been produced previously.

6.      Plaintiff's Admin Reports are not part of the credit reports Experian provides to third parties, nor are they part of the file disclosures Experian provides to consumers.  They are not created in the normal course of business, but are generated from Experian's computer systems for a specific consumer.  The Admin Reports may be generated only by a very limited number of trained Experian employees.

7.      Experian generated the Admin Reports pertaining to Plaintiff after Plaintiff filed this lawsuit.  The Admin Reports did not previously exist, even though the information contained in them was stored in Experian's computer systems.

**B.      Dispute Response Logs ("D/R" Logs)**

8.      It is my understanding that Experian has already produced Dispute/Response Logs ("D/R Logs") for Plaintiff dated February 17, 2004 (EXP00193-00198) and October 14, 2005 (EXP00229-00235) pursuant to the current protective order in this case.

9.      Plaintiff's D/R Logs are not part of the credit reports Experian provides to third parties, nor are they part of the file disclosures Experian provides to consumers.  The D/R Logs are generated from Experian's computer systems for

a specific consumer. The D/R Logs may be generated only by a very limited number of trained Experian employees.

10.    The D/R Logs detail Experian's reinvestigation of Plaintiff's file, the results of Experian's reinvestigations, and the changes to Plaintiff's file based on these reinvestigations.

11.    The D/R Logs also contain the identification information and account information for disputed items as that information appeared on Experian's system *at the time of a dispute*. The D/R Logs here show the specific name information associated with the five accounts at issue as of Plaintiff's dispute in 2002.

12.    The D/R Logs show the original information as well as the updated information for the various "name rows" that were updated in 2002.

## C.    Long Admin Report

13.    Like the Admin Reports, referred to above, the Long Administrative Report ("Long Admin") is specific to Plaintiff. It includes a coded depiction of Plaintiff's identifying and credit information as it currently exists in Experian's consumer credit database.

14.    Like the Admin Reports, the Long Admin is a coded document that can be generated from Experian's system, but that does not exist unless Experian makes a special request to compile information in that format. It is not part of the credit reports provided to third parties, is not part of the file disclosures previously

sent to Plaintiff, and is not generated in the ordinary course of Experian's business. Unlike the Admin Report, however, the Long Admin is only rarely used to investigate a consumer's dispute. I find Long Admins useful only in an extremely small percentage of cases, *e.g.*, some of the cases in which there is an issue relating to the precise date on which information was reported by a creditor and information relating to the precise date on which account information currently in Experian's files was first loaded onto Experian's system. The Long Admin sought in this case has not been produced in any prior litigation or provided to anyone other than Experian and its counsel.

15.    The Long Admin contains the same information fields as the Admin Report, except for two additional, and highly sensitive, information fields: the tradeline "array" fields and "SCORE" fields. The tradeline "arrays" show: (1) Experian's coded interpretation of the status of each tradeline or account; (2) the date the status information was recorded by Experian; and (3) the period of time for which the status information applied to the account. It is my understanding that Experian has offered to provide Plaintiff with the tradeline "array" information for each of the five accounts at issue in this lawsuit, subject to a "Plaintiff's Attorneys' Eyes Only" provision.

16.    The "SCORE" information appears in the "name row" section of the Long Admin and is based on the identification information appearing in the

consumer's file at the time a Long Admin is created. It is not based on historical identification information that has been deleted or updated. Here, the Long Admin will not contain any "SCORE" information for the name rows associated with the accounts at issue, because such information has been deleted and updated. The only documents containing historical identification information associated with the accounts at issue are the D/R Logs, which I understand have already been produced. Like the tradeline arrays, the Name "SCORE" field is a highly critical component of Experian's system, and reveals details about one of Experian's most important competitive advantages.

17.    The Long Admin (1) does not contain more complete data regarding the identifying segments (name, address, social security number, etc.) than the Short Admin; (2) does not provide historical identification information indicating the identification reported for a particular account; (3) does not contain information regarding how the identification information associated with a particular account changed over time; (4) does not explain how the false information came into Plaintiff's file; (5) does not describe Experian's procedures; and (6) does not enable an attorney or litigant to be able to track and prove the full history of a consumer's Experian file. Quite simply, the Long Admin provides the same information as the previously produced Admin Report for the accounts at issue,

except for the sensitive tradeline array information which Experian has already agreed to provide on a "Plaintiff's Attorneys' Eyes Only" basis.

18.     Indeed, I have conducted extensive research related to computer matching issues, and I have never found "SCORE" information useful to my investigation, for the reasons set forth above.  To the contrary, I would find such information misleading in my investigation.  Name "SCORE" information is not included in the Admin Report and is created each time that a Long Admin is created.  Were I to ever want to derive the "SCORE" values, I could easily derive them from the Admin Report that I was reviewing.  Of course, they could vary from one Admin Report to another.

## III.    Experian's Computer System is its Business

19.     Experian maintains credit information on more than 200 million consumers.

20.     Experian's credit reporting computer system *is its business*.  As such, Experian has designed a unique computer system to process information received from tens of thousands of diverse lenders and other entities involved in the credit industry, from the public record, and from other sources.  Experian has spent tens of millions of dollars and countless hours of employee time developing and enhancing its unique and sophisticated computer system to achieve maximum possible accuracy of the credit information Experian provides to those with

permissible purposes for receiving consumer credit information. By doing so,

Experian enjoys a major advantage in the highly competitive credit reporting

marketplace. Consequently, if information about its system were to get into the

hands of a current or potential competitor, it could help to enable the competitor to

create or enhance its own systems and remove the competitive edge currently

enjoyed by Experian. Information about the structure, logic, and codes of

Experian's system is invaluable to anyone attempting to reverse engineer the

system. Experian's competitors and companies hoping to enter the credit reporting

industry could build or refine a competing system at a substantially reduced cost

and substantially reduced risk. They would unfairly receive the benefits of

Experian's investment and hard work, without having to incur the costs.

Furthermore, if this information were to fall into criminal hands, it would threaten

the credibility of Experian's entire credit reporting system and pose a serious threat

to the privacy of consumers on whom Experian reports information. Such actions

could lead to a loss of confidence in Experian's credit reports. Accordingly,

Experian strives to maintain the secrecy of its computer systems, and access to this

highly sensitive information is limited only to those with an absolute need to know.

21.    Experian diligently guards against disclosure of information relating

to its system. In order to protect its system, Experian has introduced a number of

safeguards, including the addition of an information security department within

Experian, information security regulations, and mandatory information security training of all employees. Experian also restricts access to sensitive documents within its own walls. In fact, documents containing secret information, such as those presently at issue, are given confidential status at Experian.

22.    Experian's computer system weighs a number of factors devised over years of experience in the consumer credit reporting business. The facts used and the weight given to each factor have been revised from time to time over the history of Experian's consumer credit business. These factors, and the accurate results provided by their utilization, are one of the key elements of Experian's business that distinguishes it from its competitors. As such, Experian keeps such information highly confidential and has not disclosed the details of its matching system to anyone outside of Experian despite being involved in credit reporting litigation over a number of years. Requiring Experian to provide Plaintiff with the code underlying the matching system is tantamount to giving away Experian's business.

23.    The "soft delete" function is applied to prevent the reappearance of deleted addresses and tradelines, not names such as "Jerry Willard." The specifics of Experian's "soft delete" procedures are one of the key elements of Experian's business that distinguishes it from its competitors. As such, Experian keeps such information highly confidential.

## IV.   Three Primary Risks of Disclosing Codes and Information Displayed

24.   <u>Risk of Reverse-Engineering</u>.  The first primary risk associated with production of documents related to Experian's system is the threat of reverse-engineering.  The type, nature and manner of display of the information in the confidential documents sought by Plaintiff can be used to reverse-engineer Experian's system -- its "Crown Jewels" -- and to ultimately erode Experian's competitive advantage.  The specific details of the system are not voluntarily or intentionally disclosed in lawsuits or to any government agency.

25.   Someone seeking to reverse-engineer Experian's system would find the codes and coded information contained in these documents, as well as the structure of these documents, extremely useful.  By comparing the type and nature of information included on multiple documents such as these, related to different consumers, a person could undertake to reverse-engineer Experian's system.  Each additional document produced and made public would have an incremental benefit to those who would copy Experian's system.  Thus, the more examples of these documents that reach the public sphere, the greater their value to those who would copy or reverse-engineer Experian's system.  Increased access to Experian's Confidential Documents therefore increases the probability that outsiders will be able to discern the "Crown Jewels" of Experian's credit reporting systems and

procedures. Accordingly, Experian strives to protect these documents and to avoid producing them without a protective order.

26.    Risk of Identity Theft. The second risk associated with producing these documents without benefit of a protective order is the risk of identity theft. This information would be of great use to someone seeking to steal another's identity for his personal gain. Over time, the increased risk and incidence of identity theft may compromise the credit reporting system in general. Armed with information about the inner workings of Experian's system, identity thieves might be able to victimize millions of consumers. They might also be able to use the information to hide evidence of their crimes from their victims, who often detect the identity theft by observing the imposter's activity on their credit reports.

27.    Risk of Interference from Credit Clinics. The third risk associated with producing the above-described documents is the potential for interference by unscrupulous credit clinics with Experian's consumer credit database. Armed with knowledge of Experian's system information, such clinics could advise a consumer with poor credit on how to adjust his identifying information so as to lose his existing bad credit history and gain a fresh start at the expense of consumers who do pay their bills. In short, repeated, unprotected production of these documents ultimately would jeopardize the integrity of the credit reporting industry, making it

more expensive and more difficult for consumers who pay their bills in a timely fashion to obtain credit.

## V.    Heightened Risk of Reverse-Engineering When Producing Long Admin

28.    The reverse engineering risks described above are even greater with respect to the Long Admin.  As noted above, the Long Admin displays Name "SCORE" fields and tradeline array information not included on the Admin Report or any other document generated by Experian.  A person seeking to reverse-engineer Experian's matching system would benefit greatly from learning which identification elements are included in the Name "SCORE" comparison because this would reveal the foundation upon which Experian's matching system has been built.

## VI.   The Confidential Policy and Procedure Manuals

29.    The Admin Handbook and the incentive and salary information (collectively, the "Confidential Policy and Procedure Manuals") contain proprietary information on how Experian maintains its credit reporting procedures. The Admin Handbook, for example, explains in detail to the reader how to read and interpret every code displayed in the Long Admin.  The Admin Handbook contains a listing of the codes that appear in both the Admin Report and the Long Admin.  The incentive and salary information demonstrate how Experian's employees' salary and bonus systems operate.

A.     **The Confidentiality of Experian's Policy and Procedure Manuals is Necessary to Protect Experian's Competitive Position in the Credit Reporting Market.**

30.     Experian has invested very large sums of money and countless hours of employee time throughout the years developing and enhancing its sophisticated policies and procedures to achieve maximum possible accuracy and completeness of the credit information Experian provides to those with permissible purposes for receiving consumer credit information. By doing so, Experian enjoys a competitive advantage in the credit reporting marketplace.

31.     Development of a highly accurate consumer credit reporting system involves delicate incorporation of accumulated knowledge -- knowledge which must, therefore, be protected from those who would seek to improve or develop a rival system by obtaining Experian's secrets, instead of investing as extensively as Experian has done over many years and continues to do so today. Heightened protection is necessary for the incentive and salary information. If these documents were to fall into its competitors' hands, Experian's unique system for promoting and rewarding high-quality and efficient work -- a system that provides tangible benefit to Experian and its clients -- would be lost.

32.     Experian's competitors would benefit substantially by gaining access to detailed information regarding Experian's computer software and the confidential, proprietary documentation that reflects the trade secrets of how

Experian's computer systems and investigation procedures function. This detailed information is contained in the Confidential Policy and Procedure Manuals at issue.

33. Consequently, if information about its system were to fall into the hands of a current or potential competitor, it would enable the competitor to create or enhance its own procedures and remove the marketing edge currently enjoyed by Experian. Thus, in litigation matters, Experian vigorously strives to ensure that these documents are not produced without a Court-sanctioned protective order.

**B.     The Confidentiality of Experian's Policy and Procedure Manuals is Necessary to Protect Consumers.**

34. Furthermore, if the information contained in Experian's Confidential Policy and Procedure Manuals were to fall into criminal hands, it would threaten the credibility of Experian's entire credit reporting system and pose a serious threat to all consumers on which Experian reports information. Such actions could lead to a loss of confidence in Experian's credit reports.

35. More importantly, however, permitting access to Experian's Confidential Policy and Procedure Manuals would open up Experian's system to potential criminals, making it easier for identity theft to take place.

36. Disclosure of the Confidential Policy and Procedure Manuals to the public effectively shows potential criminals exactly how Experian's system works,

creating a high risk that those individuals would be able to develop methods to successfully circumvent Experian's procedures.

I, David A. Browne, declare under penalty of perjury that the foregoing is true and correct.

DATED: December 30, 2005

_____
David A. Browne