Of Counsel:
PRICE OKAMOTO HIMENO & LUM
Attorneys at Law
KENNETH T. OKAMOTO, ESQ. 2068
ROBERT M. KOHN, ESQ.     6291
707 Richards Street, Suite 728
Honolulu, Hawaii 96813
Telephone: (808) 538-1113
Fax: (808) 533-0549
Email:    rkohn@pohlhawaii.com

CROWELL & MORING LLP
Attorneys at Law
DONALD E. BRADLEY, ESQ. (*pro hac vice*, Cal. Bar No. 145037)
THERESA C. LOPEZ, ESQ. (*pro hac vice*, Cal. Bar No. 205338)
3 Park Plaza, 20th Floor
Irvine, California 92614-8505
Telephone:  (949) 263-8400
Email:    dbradley@crowell.com
          tlopez@crowell.com

Attorneys for Defendant
TRANS UNION LLC


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


| | |
|---|---|
| GERALD H. ELLER,<br><br>             Plaintiff,<br><br>     v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation; TRANS UNION LLC, a foreign corporation; BANK ONE CORPORATION, a foreign corporation,<br><br>             Defendants. | CIVIL NO. 04-CV-174 DAE KSC<br><br>DEFENDANT TRANS UNION LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; CERTIFICATE OF SERVICE<br><br>Action Filed:  12/17/2003<br><br>Date:     02/27/2006<br>Time:     10:30 a.m.<br>Judge:    Hon. David A. Ezra |

## TABLE OF CONTENTS

I.   INTRODUCTION...............................................1

II.  STATEMENTS OF FACTS........................................2

III. LEGAL STANDARD.............................................7

IV.  ARGUMENT...................................................9

     A.   Plaintiff's Fourth and Fifth Causes of
          Action Alleging Trans Union Either
          Negligently and/or Willfully Violated
          Sections 1681e(b) and 1681i of the FCRA Fail
          Because Plaintiff Cannot Prove Trans Union
          Issued A Report Containing Inaccurate
          Information...........................................9

     B.   Plaintiff's Fourth and Fifth Causes of
          Action Alleging Trans Union Either
          Negligently and/or Willfully Violated
          Section 1681i of the FCRA Fail Because
          Plaintiff Did Not Dispute Any Information
          Contained In His Trans Union Consumer Report........11

     C.   Plaintiff's Fourth and Fifth Causes of
          Action Alleging Trans Union Negligently
          And/or Willfully Violated Section 1681e(b)
          of the Fair Credit Reporting Act Fail
          Because Trans Union Cannot Be Held Liable
          For Not Reporting in 2003 Accounts That It
          Had Previously Reported in 2001......................13

     D.   Plaintiff's Fourth And Fifth Causes Of
          Action Alleging Trans Union Negligently
          And/Or Willfully Violated Section 1681g of
          the Fair Credit Reporting Act Fails Because
          Trans Union Provided Plaintiff With His
          Consumer Disclosure Upon Request.....................16

     E.   Plaintiff's Sixth Cause of Action Alleging
          Trans Union Violated the Colorado Consumer
          Credit Reporting Act, Sections 12-14.3-101,
          et seq., Fails For The Reasons Set Forth
          Above As To Plaintiff's FCRA Sections
          1681e(b), 1681i and 1681g Claims.....................18

F.   All of Plaintiff's Causes of Action Against
     Trans Union Fail Because Plaintiff Cannot
     Prove That He Has Suffered Any Damages...............19

     1.   Air Traffic Controller Position.................19

          a.   Plaintiff Failed Required Exam And
               Was Denied Waiver From Exam
               Requirements................................19

          b.   Plaintiff Was Informed Of The
               Military's Decision to Deny His
               Air Traffic Controller Application
               Before The NCO Report Was Issued..........20

          c.   Plaintiff Was Never Told His
               Clearance Was Denied Based on His
               Credit Report And Admits He
               Believes The Military
               Discriminated Against Him.................20

          d.   The Only Credit Report Produced In
               This Litigation That The Military
               Had Prior To February 20, 2002 and
               Could Have Based Its Decision On
               Was A December 18, 2001 Experian
               Report....................................21

     2.   Emotional Distress.............................22

          a.   Plaintiff Attempted To Secure
               "Expert Testimony" Concerning His
               Mental Health Following His
               Deposition In His First Lawsuit
               Against Trans Union in November
               2000......................................22

          b.   Plaintiff Admits the Actions of
               the Furnishers of The Inaccurate
               Information To the Credit
               Reporting Agencies Caused Him
               Emotional Distress........................22

          c.   Plaintiff Attributes Somewhere
               Between 95-100% Of His Emotional
               Distress to Experian......................22

d.   Plaintiff Admits He Experienced
     Significant Emotional Distress
     Other Than Relating To His Credit
     Report....................................23

          i.   August 1999 Death
               Of His Brother..............23

          ii.  September 11, 2001
               Terrorist Attacks
               And Related Events.........23

          iii. Failure To Obtain
               Clearance..................24

          iv.  Discrimination By
               and Other Negative
               Experiences With
               Other Soldiers in
               His Battalion..............25

          v.   Involuntary
               Admittance To
               Mental Ward On
               March 3, 2004 and
               August 4, 2004
               While In Military..........26

          vi.  Court Martial..............26

          vii. Demotion...................26

          viii.   Negative
               Written Evaluations
               From Military
               Between March 2002
               and September 2004.........27

          ix.  Divorce From Second
               Wife.......................27

e.   Plaintiff Disclosed All Of His
     Alleged Credit Problems And
     Personal Problems In A Book He
     Wrote And Published Entitled
     "Liberty For None And Injustice
     For All"..................................27

3.   Plaintiff Has No Credit Denials Based
     On A Trans Union Report........................29

4.   Plaintiff's Post-February 2002 Claims
     Concerning Any Harm to His Military
     Employment Or Inability To Obtain A
     Security Clearance.............................29

     a.   Plaintiff Stipulated To Drop All
          Post-February 2002 Claims Related
          to Military Employment Or Denial
          of His Security Clearance..................29

     b.   Plaintiff Was Informed That His
          Security Clearance Application Was
          Stopped Because Of His Impending
          Medical Discharge..........................30

     c.   Plaintiff Likely Would Have Been
          Denied the Security Clearance Even
          If Were Not Stopped Because He
          Admittedly Lied Repeatedly On His
          Application, Had A History Of
          Alleged Violence And Criminal
          Behavior, And There Were Numerous
          Discrepancies In Interviewers
          Given By Third Parties Compared To
          Statements He Made In His
          Application................................31

V.   CONCLUSION.............................................33

## TABLE OF AUTHORITIES

### FEDERAL CASES

Ali v. Vikar Management Ltd.,
    994 F.Supp. 492 ........................................15

Anderson v. Liberty Lobby,
    Inc., 477 U.S. 242, 106 S.Ct. 2505 .....................8

Andrews v. Trans Union Corp., Inc., 7 F.Supp.2d 1056
    (C.D. Cal. 1998) ...................................10, 14

Arriola v. Safeco,
    15 F.3d 1082 ..........................................19

Ben-Hur v. Equifax Information Services,
    Inc., 976 F.Supp. 795 .................................17

Cahlin v. General Motors Acceptance Corp.,
    936 F.2d 1151 ......................................9, 14

Celotex Corp. v. Catrett,
    477 U.S. 318, 106 S.Ct. 2548 .......................7, 8

Crabill v. Trans Union LLC,
    259 F.3d 662 ......................................10, 11

Cushman v. Trans Union Corp.,
    920 F.Supp. 80 ....................................10, 11

First National Insurance Co. v. F.D.I.C.,
    977 F.Supp. 1051 ......................................8

Guimond v. Trans Union Credit Information Co.,
    45 F.3d 1329 .......................................9, 13

Hasbun v. County of Los Angeles,
    323 F.3d 801 ..........................................15

Koropoulos v. Credit Bureau,
    Inc., 734 F.2d 37 .............................9, 14, 15

McPhee v. Chilton Corp.,
    468 F.Supp. 494 .......................................16

Philbin v. Trans Union Corp.,
   101 F.3d 957 .........................................14

Razilov v. Nationwide Mutual Insurance Co.,
   242 F.Supp.2d 977 ...................................15

Scharpf v. AIG Marketing,
   Inc., 242 F.Supp.2d 455 .............................15

Scott v. Real Estate Finance Group, 956 F.Supp. 375
   (E.D.N.Y. 1997) .....................................15

Thomas v. Trans Union LLC,
   197 F.Supp.2d 1233 ..................................10

Washington v. CSC Credit Services, Inc., 180 F.R.D.
   309 (E.D. La. 1998) .................................15

Wilting v. Progressive County Mutual Insurance Co.,
   227 F.3d 474 ........................................15

Wright v. Bogs Management, Inc., 2000 WL 1774086.........15

Yeager v. TRW,
   Inc., 984 F.Supp. 517 ..............................15

Zeller v. Sarnia,
   758 F.Supp. 775 .....................................19

**FEDERAL STATUTES**

15 U.S.C. § 1681e(b)................................13, 14

15 U.S.C. § 1681g...................................16

15 U.S.C. § 1681s...................................14

15 U.S.C. §§ 1681e(b) and 1681i.........................1

Colorado Revised Statutes 12-14.3-103.5..................18
   Section 12-14.3-104..................................18
   Section 12-14.3-106..................................18

Fed. R. Civ. P. 56.......................................7

Fed. R. Civ. P. 56(b).......................................8

Fed. R. Civ. P. 56(d).......................................8

**DEFENDANT TRANS UNION LLC'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR,
<u>IN THE ALTERNATIVE, SUMMARY ADJUDICATION</u>**

**I.    <u>INTRODUCTION</u>**

Defendant Trans Union LLC ("Trans Union") moves this Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment, or, in the alternative, summary adjudication, in its favor against Plaintiff Gerald H. Eller ("Plaintiff").  Trans Union is entitled to summary judgment, or, in the alternative, summary adjudication, because there is no material issue of fact in dispute and judgment in Trans Union's favor is appropriate as a matter of law.

By this Motion, Trans Union will show the following:

(1) Plaintiff's claims under Sections 1681e(b) and 1681i of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b) and 1681i, fail because Trans Union did not issue an inaccurate report and Trans Union is not responsible for any alleged inaccuracies contained in reports issued by third party resellers.

(2)  Plaintiff's claim under Section 1681i of the FCRA fail because Plaintiff did not notify Trans Union of any disputed items of information contained in a report prepared by Trans Union.

(3)  Plaintiff's claim under Section 1681e(b) of the FCRA as to the 2003 consumer disclosures fails because Trans Union is not required to report every account Plaintiff owns, but to accurately and completely report each item of information that does appear on its reports.

(4)  Plaintiff's claim under Section 1681g of the FCRA as to the 2003 consumer disclosures fails because Trans Union disclosed to Plaintiff the contents of the consumer file it identified based on the indicative information Plaintiff provided in his request and based on the contents of the identified file as of the date of the request.

(5)  Plaintiff's claims under the Colorado Consumer Credit Reporting Act, which in substance mirrors the FCRA, all fail for the same reasons cited above concerning Plaintiff's FCRA claims.

(6)  All of Plaintiff's claims fail because he has no evidence that he has sustained any damages recoverable against Trans Union.

## II.  STATEMENT OF FACTS

In 1999, Plaintiff filed a lawsuit against Trans Union in Colorado state court seeking damages for alleged inaccuracies reported on his Trans Union credit report, including an allegedly inaccurate alias of "Jerry Willard," inaccurate addresses, and inaccurate accounts.  (See Declaration of Theresa C. Lopez ("Lopez Decl."), ¶ 2.)  The action was later removed to

2

the United States District Court for the District of Colorado.
(See id. at ¶ 3.)

In or about August 2001, Plaintiff and Trans Union reached
a settlement of that lawsuit.  (See id. at ¶ 4.)  On August 14,
2001, Trans Union prepared a consumer disclosure regarding
Plaintiff.  (See Declaration of Diane Terry ("Terry Decl."),
¶ 2.)

On February 20, 2002, Plaintiff met with Sergeant First
Class Deidre Williams, at which time SFC Williams told Plaintiff
that he would not receive the air traffic controller position
because he had failed the Flight Four Physical's hearing test,
and his request for a waiver from the hearing test had been
denied.  (See Lopez Decl., ¶ 5; Concise Statement, Ex. B (Vol. 2
- 160:12-161:1.)

During their February 20, 2002 meeting, SFC Williams and
Plaintiff discussed the alternative possibility of Plaintiff
becoming a telecommunications operator maintainer, which,
however, required a top secret security clearance.  SFC Williams
asked Plaintiff about any credit denials that he had had in his
past.  In response, Plaintiff contacted his attorney during his
meeting with SFC Williams and asked his attorney to pull
Plaintiff's credit report and fax it to SFC Williams.
Plaintiff's attorney faxed SFC Williams a February 20, 2002 tri-

merged credit report[1] issued by NCO Financial Services (the "NCO Report").  (<u>See</u> Lopez Decl, ¶¶ 5-6; Concise Statement, Ex. B (Vol. 2 – 159:8 – 161:2) and Ex. C.)  The NCO Report, among other things, stated that Plaintiff had an a/k/a of "Jerry Willard" and that he had previously lived at 1919 University Avenue, Dubuque, IA 52001, 1564 Alta Pl., Dubuque, IA 52001 and E. 11927 Harvard, Aurora, CO 80014.  (<u>See</u> Concise Statement, Ex. C.)

On February 27, 2002, Plaintiff's counsel wrote to Trans Union's counsel concerning alleged inaccuracies contained in the February 20, 2002 NCO Report.  (<u>See</u> Lopez Decl., ¶ 7; Concise Statement, Ex. D.)  In his letter, Plaintiff's counsel stated: "Pursuant to the agreement [the settlement agreement entered into by Plaintiff and Trans Union in the first lawsuit], if any reappearance of the accounts occurs, he is to give you written notice, in which case Trans Union has 30 days to correct the error."  (<u>See</u> <u>id.</u>)  Plaintiff's counsel stated that Trans Union had reported the Willard alias and a First USA Bank account. (<u>See</u> <u>id.</u>)[2]

---

[1]  A tri-merged report is a credit report which contains consumer information obtained by the third party reseller, such as NCO Financial Services, from three independent consumer reporting agencies, Trans Union, Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services LLC ("Equifax").  (<u>See</u> Terry Decl., ¶ 3.)

[2]  Plaintiff's current counsel, during conversations with the undersigned, has acknowledged that Trans Union is not listed as the source of the (continued…)

Approximately two weeks later, Plaintiff's counsel wrote to Trans Union's counsel again and stated that he had not received a reply to his February 27, 2002 letter, but acknowledged that the settlement agreement allowed Trans Union 30 days to correct the errors identified.  (See Lopez Decl., ¶ 9; Concise Statement, Ex. E.)[3]

Plaintiff has not produced any credit report or consumer disclosure dated after February 27, 2002 that shows that Trans Union continued to report the Willard alias or any of the Willard addresses or accounts.  (See Lopez Decl., ¶ 10.)

On March 19, 2002, Plaintiff obtained a tri-merged credit report from Advanced Information Services.  (See id. at ¶ 11; Concise Statement, Ex. F.)  Plaintiff claims the report is inaccurate because Trans Union is not reporting all of his accounts that he believes it should be reporting.  (See Concise Statement, Ex. B (Vol. 2 - 172:6-182:7).)  Plaintiff also claims that some inquiries may be missing from the report, but could not identify which ones or which credit reporting agency should have reported them.  (See id., Ex. B (Vol. 2 - 179:11-180:2.)  Plaintiff has no knowledge as to how Advanced Information

---

(…continued)

First USA Bank account appearing on the NCO Report.  (See Lopez Decl., ¶ 8.)

[3]    Mr. Kleinman's follow up letter is dated February 27, 2002, but it is clear from the content of the letter that it is misdated.

Services obtains and compiles the information appearing in its reports. (See id., Ex. B (Vol. 2 - 174:7-12.) The only harm Plaintiff attributes to the March 19, 2002 Advanced Information Services report is emotional distress and embarrassment. (See id., Ex. B (Vol. 2 - 183:21-184:21.)

On March 8, 2003, Plaintiff requested a copy of his consumer disclosure, this time directly from Trans Union. Trans Union processed his request, based on the indicative information Plaintiff provided and based on the contents of the identified file as of the date the request was processed, and mailed Plaintiff a copy of his consumer disclosure. (See Terry Decl., ¶ 4; Concise Statement, Ex. G.) Plaintiff claims that the March 8, 2003 consumer disclosure was incomplete because it reported only a single trade line and no other credit history.

On April 30, 2003, Plaintiff again requested a copy of his consumer disclosure from Trans Union. Trans Union processed his request, based on the indicative information Plaintiff provided and based on the contents of the identified file as of the date the request was processed, and mailed Plaintiff a copy of his consumer disclosure. (See Terry Decl., ¶ 5; Concise Statement, Ex. H.) Plaintiff claims that again the consumer disclosure he received from Trans Union was incomplete because it reported only a single trade line and no other credit history.

On October 3, 2003, Plaintiff obtained a tri-merged report from an on-line source identified as "My Credit Center." (See Lopez Decl., ¶ 12; Concise Statement, Ex. I.)  Plaintiff claims the report is inaccurate because Trans Union is not reporting all of his accounts that it should be reporting. (See Concise Statement, Ex. B (Vol. 2 - 184:22-192:4.)  Plaintiff does not know where My Credit Center gets its credit information nor does he know how its processes that information. (See id., Ex. B (Vol. 2 - 183:15-20).)

On November 16, 2005, Plaintiff served his Federal Rule of Civil Procedure 26(a)(2) Expert Witness Report. (See Lopez Decl., ¶ 13; Concise Statement, Ex. J.)  Nowhere in the report does Plaintiff's expert identify any acts or omissions on the part of Trans Union that either violated the Fair Credit Reporting Act or any other federal or state law, or harmed Plaintiff in any way. (See id.)

## III. **LEGAL STANDARD**

A party is entitled to summary judgment where "there is no genuine issue of material fact and the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A court grants summary judgment in favor of the defendant when the plaintiff is unable to make a showing sufficient to establish an element essential to that party's case, and on which that party would bear the burden of proof at trial. See Celotex Corp. v.

7

Catrett, 477 U.S. 318, 322, 106 S. Ct. 2548 (1986).  Only
disputes over material facts, or those facts that might
ultimately affect the outcome of the lawsuit under governing
law, will preclude the entry of summary judgment.  See Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505
(1986).  A genuine issue of material fact exists only if there
is sufficient contradictory evidence such that a reasonable jury
could return a verdict for the non-moving party.  Id.

    The burden of establishing the non-existence of a genuine
issue is on the moving party.  See Celotex Corp., 477 U.S. at
322.  Once this burden is met, the non-movant must then set
forth specific facts showing that there remains a genuine issue
of material fact to be determined at trial.

    A party may seek summary judgment "as to all or any part"
of a claim.  Fed. R. Civ. P. 56(b).  The court may grant summary
adjudication as to specific issues without granting judgment as
to an entire cause of action if it will narrow issues for trial.
See Fed. R. Civ. P. 56(d); First National Ins. Co. v. F.D.I.C.,
977 F. Supp. 1051, 1055 (S.D. Cal. 1997).

    As demonstrated below, there are no disputed issues of
material fact, and all of Plaintiff's claims fail as a matter of
law.

///

///

8

IV.   **ARGUMENT**

      **A.**    **Plaintiff's Fourth and Fifth Causes of Action Alleging Trans Union Either Negligently and/or Willfully Violated Sections 1681e(b) and 1681i of the FCRA Fail Because Plaintiff Cannot Prove Trans Union Issued A Report Containing Inaccurate Information**

      In his Fourth and Fifth Causes of Action, Plaintiff alleges that Trans Union negligently and/or willfully violated Section 1681e(b) of the Fair Credit Reporting Act.  In order to maintain a cause of action under Section 1681e(b), Plaintiff must first prove that Trans Union issued a report containing inaccurate information about him.  See Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (To state a cause of action under Section 1681e(b), the consumer "must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information.") (emphasis added); see also Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991) ("In order to make out a prima facie violation of [Section 1681e(b)], the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information.") (emphasis added); Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 39 (D.C. Cir. 1984) ("[T]hese provisions allow a consumer to bring suit for a violation of Section 1681e(b) only if a credit reporting agency issues an

inaccurate report on the consumer.") (emphasis added); <u>Andrews</u> <u>v. Trans Union Corp., Inc.</u>, 7 F. Supp.2d 1056, 1072 (C.D. Cal. 1998) <u>aff'd</u> 289 F.3d 600 (9th Cir. 2001) ("[T]he burden is first on Plaintiff to raise a genuine issue of material fact that Trans Union <u>prepared a report</u> on her containing inaccurate information.") (emphasis added).

Similarly, in order to maintain a cause of action under Section 1681i of the FCRA, Plaintiff must also first prove that Trans Union issued a report containing inaccurate information about him.  See <u>Thomas v. Trans Union LLC</u>, 197 F. Supp.2d 1233, 1236 (D. Or. 2002) ("The elements of a claim for failure to reinvestigate under Section 1681i(a) are: (1) a plaintiff's credit file contains inaccurate or incomplete information. . . ."); <u>see also Cushman v. Trans Union Corp.</u>, 920 F. Supp. 80, 83 (E.D. Pa. 1996) ("a credit reporting agency generally has no duty to reinvestigate unless and until the consumer notifies it that the credit report contains inaccurate information"); <u>see also Crabill v. Trans Union LLC</u>, 259 F.3d 662, 663 (7th Cir. 2001) ("Only one creditor who denied credit to Jerry received a report that mistakenly attributed information about John to Jerry.  And he received it not from Trans Union but from a seller of credit reports. . . .  The inaccuracy cannot be attributed to Trans Union.")

Here, the only credit reports that Plaintiff has produced which allegedly contain inaccurate information are the February 20, 2002 NCO Report, the March 19, 2002 Advanced Information Services report, and the October 3, 2003 "My Credit Center" report.  All of these reports were prepared by third parties, not Trans Union.  As the Court found in Crabill, a consumer reporting agency cannot be held liable for allegedly inaccurate information contained in a consumer report prepared by a third party reseller.  Plaintiff has not and cannot produce any Trans Union report that contains inaccurate information about him.  As such, Plaintiff's Fourth and Fifth Causes of Action alleging Trans Union violated Sections 1681e(b) and 1681i of the FCRA must fail.  Trans Union therefore respectfully requests that the Court grant summary judgment in its favor as to these causes of action.

> **B.    Plaintiff's Fourth and Fifth Causes of Action Alleging Trans Union Either Negligently and/or Willfully Violated Section 1681i of the FCRA Fail Because Plaintiff Did Not Dispute Any Information Contained In His Trans Union Consumer Report**

Plaintiff cannot maintain a cause of action against Trans Union under FCRA Section 1681i unless he notified Trans Union that he disputed the accuracy of information contained in his Trans Union consumer report.  See Cushman v. Trans Union Corp., 920 F. Supp. 80, 83 (E.D. Pa. 1996) ("a credit reporting agency

generally has no duty to reinvestigate unless and until the consumer notifies it that the credit report contains inaccurate information").

Other than disclosure requests (discussed below), the only communication Trans Union received from Plaintiff, or someone acting on Plaintiff's behalf, between August 2001 (the date of the settlement in the first lawsuit) and the date Plaintiff filed his complaint in this second lawsuit, was the February 27, 2002 letter from Plaintiff's counsel.  (See Lopez Decl., ¶¶ 7 and 9; Terry Decl., ¶ 7; Concise Statement, Ex. D.)  However, the February 27, 2002 letter related to the parties' settlement agreement, and was sent to counsel, not to Trans Union.  (See Concise Statement, Ex. D.)  In any event, the attorney letter was not a dispute because it did not concern an item of information contained in Plaintiff's Trans Union credit file, as required by FCRA Section 1681i, but rather concerned a tri-merged report prepared by a third party.  (See id.)

Since Plaintiff did not dispute with Trans Union any item of information contained in his Trans Union file as required by FCRA Section 1681i, Plaintiff's Fourth and Fifth Causes of Action alleging that Trans Union violated FCRA Section 1681i must fail.  Trans Union therefore respectfully requests that the Court grant summary judgment in its favor.

**C.    Plaintiff's Fourth and Fifth Causes of Action
Alleging Trans Union Negligently And/or Willfully
Violated Section 1681e(b) of the Fair Credit
Reporting Act Fail Because Trans Union Cannot Be
Held Liable For Not Reporting in 2003 Accounts
That It Had Previously Reported in 2001**

Plaintiff claims that his March 8, 2003 and April 30, 2003 Trans Union consumer disclosures are inaccurate because they do not contain all of the accounts that Trans Union previously reported on Plaintiff's August 14, 2001 disclosure.

FCRA Section 1681e(b) provides:  "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b) (emphasis added).  Accordingly, a plaintiff cannot state a cause of action based on something that was not "information" in a credit report (e.g., in this case, the accounts that were previously reported on the August 14, 2001 disclosure, but not reported on the 2003 disclosures). The FCRA covers accuracy of information, not volume of information.

Recognizing this, courts have held without exception that an inaccuracy in a credit report is an absolute prerequisite to a claim for an FCRA violation.  See, e.g., Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (To state a cause of action under Section 1681e(b), the consumer

13

"must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."); Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3rd Cir. 1996) ("a case of negligent noncompliance with § 1681e(b) consists of four elements: (1) inaccurate information was included in a consumer's credit report. . . . "); Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991) ("In order to make out a prima facie violation of [Section 1681e(b)], the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information."); Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 39 (D.C. Cir. 1984) ("[T]hese provisions allow a consumer to bring suit for a violation of Section 1681e(b) only if a credit reporting agency issues an inaccurate report on the consumer."); Andrews v. Trans Union Corp., Inc., 7 F. Supp. 2d 1056, 1072 (C.D. Cal. 1998) aff'd 289 F.3d 600 (9th Cir. 2001) ("[T]he burden is first on Plaintiff to raise a genuine issue of material fact that Trans Union prepared a report on her containing inaccurate information.").

The official interpretation of FCRA Section 1681e(b) by the Federal Trade Commission ("FTC"), the administrative agency charged with enforcement of the FCRA (see 15 U.S.C. § 1681s), likewise forecloses any liability for credit reporting agencies' failure to include all of a consumer's accounts on a report.

14

The FTC Commentary provides: "Consumer reporting agencies are not required to include all existing derogatory or favorable information about a consumer in their reports." Statements of General Policy or Interpretations Under the Fair Credit Reporting Act," 16 C.F.R., Subchapter F, Pt. 600, Appendix, pp. 492-519.[4]

Plaintiff is not claiming that information reported on the 2003 disclosures was inaccurate. Rather, Plaintiff's complaint is that Trans Union prepared reports that omitted the accounts previously reported in 2001. As a matter of law, Trans Union cannot be held liable under FCRA Section 1681e(b) since it did not report inaccurate information about Plaintiff.

Moreover, Plaintiff's case must be distinguished from "technical accuracy" cases, in which credit reporting agencies have been held to have violated the FCRA because account descriptions, while technically accurate, were nevertheless incomplete or otherwise misleading. See, e.g., Koropoulos v.

---

[4] Numerous courts have cited to and relied upon this FTC Commentary on the FCRA. See, e.g., Hasbun v. County of Los Angeles, 323 F.3d 801, 803 & n.2, 804 (9th Cir. 2003); Wilting v. Progressive County Mutual Ins. Co., 227 F.3d 474, 476 (5th Cir. 2000); Scharpf v. AIG Marketing, Inc., 242 F. Supp. 2d 455 (W.D. Ky. 2003); Razilov v. Nationwide Mutual Ins. Co., 242 F. Supp. 2d 977 (D. Or. 2003); Wright v. Bogs Management, Inc., 2000 WL 1774086 (N.D. Ill. 2000); Washington v. CSC Credit Services, Inc., 180 F.R.D. 309 (E.D. La. 1998), vacated on other grounds, 199 F.3d 263 (5th Cir. 2000); Ali v. Vikar Management Ltd., 994 F. Supp. 492 (S.D.N.Y. 1998); Yeager v. TRW, Inc., 984 F. Supp. 517 (E.D. Tex. 1997); Scott v. Real Estate Finance Group, 956 F. Supp. 375 (E.D.N.Y. 1997), rev'd in part 183 F.3d, 97 (2d Cir. 1999).

Credit Bureau, Inc., 734 F.2d 37 (D.C. Circuit 1984); McPhee v. Chilton Corp., 468 F. Supp. 494 (D. Conn. 1978). Each of those cases involved the actual reporting of account information. The dispute was whether the account description was accurate and complete. Here, there is no inaccurate, incomplete, or misleading account information at issue because Plaintiff is complaining about the absence of information, not the reporting of information. There can therefore be no FCRA violation.

Because the FCRA does not require Trans Union to report all account information belonging to a consumer, the Court should grant Trans Union's motion for summary judgment as to Plaintiff's FCRA Section 1681e(b) claims.

> **D. Plaintiff's Fourth And Fifth Causes Of Action Alleging Trans Union Negligently And/Or Willfully Violated Section 1681g of the Fair Credit Reporting Act Fails Because Trans Union Provided Plaintiff With His Consumer Disclosure Upon Request**

FCRA Section 1681g requires a consumer reporting agency to disclose to a consumer the contents of the file the credit reporting agency maintains on that consumer upon request. See 15 U.S.C. § 1681g.

On March 8, 2003 and April 30, 2003, Plaintiff contacted Trans Union and requested his consumer disclosure. In response to each of Plaintiff's requests, Trans Union provided Plaintiff with his consumer disclosure based on the indicative information

Plaintiff provided and based on the contents of the identified file as of the date the request was processed.  (<u>See</u> Terry Decl., ¶¶ 4-5; Concise Statement, Exs. G and H.)

Plaintiff claims that Trans Union violated FCRA Section 1681g because all of the accounts that had previously been reported on his August 14, 2001 Trans Union consumer disclosure (<u>see</u> Concise Statement, Ex. A) were not reported on the March 8, 2003 and April 30, 2003 disclosures.  However, contrary to Plaintiff's mistaken belief, Trans Union is not required to report every account belonging to a consumer, as discussed above.

Plaintiff's FCRA Section 1681g claim fails because he has no evidence that <u>as of the date of the 2003 disclosure requests</u>, the "missing accounts" were actually contained in Trans Union's file concerning him.  <u>See</u> <u>Ben-Hur v. Equifax Information Services, Inc.</u>, 976 F. Supp. 795 (E.D. Wisc. 1997) (rejecting Plaintiff's Section 1681g claim because it was "undisputed . . . that at the time Ben-Hur requested the report, Equifax no longer had any information in its files, much less a copy of the report, concerning the 1990 investigation of Ben-Hur's disability claim.")  Plaintiff cannot simply rely on the August 14, 2001 disclosure to support his claim since that disclosure does not prove what information was actually contained in Trans

Union's file concerning him <u>as of the date</u> of the two 2003 disclosure requests.

Consumer disclosures and credit reports are not static. They change constantly.  Furnishers of information constantly update information previously reported to Trans Union, including the addition of new accounts, deletion of previously reported accounts, and modifications to existing accounts.  Simply because an item of information appeared on a report previously does not mean that that item of information will continue to be reported indefinitely.  (<u>See</u> Terry Decl., ¶ 6.)

Plaintiff has no evidence to prove that Trans Union violated FCRA Section 1681g as to the 2003 disclosures.  As such, the Court should grant summary judgment to Trans Union as to Plaintiff's FCRA Section 1681g claims.

**E.    Plaintiff's Sixth Cause of Action Alleging Trans Union Violated the Colorado Consumer Credit Reporting Act, Sections 12-14.3-101, <u>et seq.</u>, Fails For The Reasons Set Forth Above As To Plaintiff's FCRA Sections 1681e(b), 1681i and 1681g Claims**

Colorado Revised Statutes ("C.R.S.") Section 12-14.3-103.5 is modeled after FCRA Section 1681e(b), C.R.S. Section 12-14.3-106 is modeled after FCRA Section 1681i, and C.R.S. Section 12-14.3-104 is modeled after FCRA Section 1681g, all of which should be interpreted based on the case law interpreting those provisions of the FCRA.

Trans Union hereby refers to and incorporates its discussion of Plaintiff's claims under FCRA Sections 1681e(b), 1681i and 1681g discussed above.  For all the foregoing reasons, Plaintiff's claims under the Colorado Consumer Credit Reporting Act fail as well.

**F.   All of Plaintiff's Causes of Action Against Trans Union Fail Because Plaintiff Cannot Prove That He Has Suffered Any Damages**

"Actual damages must be 'proximately caused by the defendant's violation of the Act.'"  <u>Arriola v. Safeco</u>, 15 F.3d 1082 (9th Cir. 1993) (quoting <u>Zeller v. Sarnia</u>, 758 F. Supp. 775, 778 n.1 (D. Mass 1991).  Here, Plaintiff has no evidence of recoverable damages against Trans Union.

**1.   Air Traffic Controller Position**

**a.   Plaintiff Failed A Required Exam And Was Denied Waiver From Exam Requirements**

Plaintiff admits that he failed the hearing portion of the Flight Four Physical required to qualify for the air traffic controller position.  (<u>See</u> Concise Statement, Ex. B (Vol. 2 - 275:24-276:9, 362:6-10.)  Additionally, on February 20, 2002, Plaintiff was informed that the military denied Plaintiff's request for a waiver of the hearing requirement.  (<u>See</u> <u>id.</u>, Ex. B (Vol. 2 - 284:18-285:4, 292:12-15.)  The military informed Plaintiff that he would not receive the air traffic controller position because he failed the hearing test and his waiver had

19

been denied.  (See Lopez Decl., ¶ 14; Concise Statement, Ex. K
(Vol. 1 - 99:6-101:1, 102:4-25, 163:17-165:9).)

> **b.  Plaintiff Was Informed Of The
> Military's Decision to Deny His Air
> Traffic Controller Application Before
> The NCO Report Was Issued**

Despite failing his hearing test, being denied a waiver,
and being told by the military that he could not be an air
traffic controller because he failed the hearing test and had no
waiver, Plaintiff contends that information contained on the
February 20, 2002 NCO Report prevented him from obtaining the
air traffic controller position.  However, Plaintiff admits that
before SFC Williams obtained the NCO Report, she had already
informed Plaintiff that he would not receive the air traffic
controller position.  (See Concise Statement, Ex. B (Vol. 2 -
160:12-161:1).)

> **c.  Plaintiff Was Never Told His Clearance
> Was Denied Based on His Credit Report
> And Admits He Believes The Military
> Discriminated Against Him**

Plaintiff admits that he was never told that he was denied
the air traffic controller position because of his credit
report.  (See id., Ex. K (Vol. 1 - 104:15-18).)  Additionally,
Plaintiff testified that he believed his security clearance was
denied because, at least in part, he was being discriminated
against in the military due to his gender, race, age, and

physical disability.  (See id., Ex. K (Vol. 1 - 132:11-133:4)

and Ex. B (Vol. 2 – 251:12-25).)

> **d.   The Only Credit Report Produced In This
> Litigation That The Military Had Prior
> To February 20, 2002 and Could Have
> Based Its Decision On Was A December
> 18, 2001 Experian Report**

Plaintiff has produced records that show that on December

18, 2001 the military obtained a copy of Plaintiff's credit

report from Experian.  (See Lopez Decl., ¶ 15; Concise

Statement, Ex. L.)  Plaintiff admits that SFC Williams told him

he did not qualify for the air traffic controller position

before she received the February 20, 2002 NCO Report.  (See

Concise Statement, Ex. B (Vol 2 – 160:12-161:1).)  Therefore,

even assuming that decision was based on Plaintiff's credit, the

only credit report the military apparently had in its possession

prior to February 20, 2002 was the December 18, 2001 Experian

report.  (See id., Ex. L.)  Trans Union cannot be held liable

for Plaintiff's not receiving the air traffic controller

position if that decision was based upon the Experian report.

///

///

///

///

///

///

2.    **Emotional Distress**

a.    **Plaintiff Attempted To Secure "Expert Testimony" Concerning His Mental Health Following His Deposition In His First Lawsuit Against Trans Union in November 2000**

After being questioned about evidence of his emotional distress in his November 2000 deposition in his first lawsuit against Trans Union, Plaintiff visited the Denver V.A. Hospital to ask for a mental health evaluation to support his claim against Trans Union.  (See id., Ex. K (Vol. 1 - 264:13-266:7, 271:23-272:18.)  Plaintiff admits the V.A. turned him away because there was nothing wrong with him.  (See id., Ex. K (Vol. 1 - 264:13-265:2, 266:3-6).)

b.    **Plaintiff Admits the Actions of the Furnishers of The Inaccurate Information To the Credit Reporting Agencies Caused Him Emotional Distress**

Plaintiff admits that he experienced emotional distress as a result of the actions of the furnishers who allegedly reported inaccurate information about him to the credit reporting agencies.  (See id., Ex. K (Vol. 1 - 292:20-293:1, 293:11-15).)

c.    **Plaintiff Attributes Somewhere Between 95-100% Of His Emotional Distress to Experian**

Plaintiff admits that of all the emotional distress he has experienced as a result of his credit reporting issues, he attributes somewhere between 95-100% of that emotional distress

22

to Experian.  (See id., Ex. K (Vol. 1 - 294:12-295:18).)  In
fact, when asked whether there were any problems in his life
since 2000 that he does not attribute to Experian, he replied
"not really."  (See id., Ex. B (Vol. 2 - 241:8-15).)

    Consistent with the admissions described above, Plaintiff's
Expert Witness Report focuses exclusively on Experian.
Plaintiff's expert never even mentions Trans Union.  Plaintiff
cannot realistically expect to be able to prove that Trans Union
caused his damage when his own expert can not.  (See id., Ex.
J.)

> ### d.    Plaintiff Admits He Experienced
> ### Significant Emotional Distress Other
> ### Than Relating To His Credit Report

> #### i.    August 1999 Death Of His Brother

    Plaintiff testified that his brother, Glenn, died of cancer
in August 1999.  However, Plaintiff denied that he experienced
any sadness, anger, or depression at all as result of his
brother's death.  (See id., Ex. B (Vol. 2 - 212:8-213:17).)

> #### ii.    September 11, 2001 Terrorist Attacks
> #### And Related Events

    Plaintiff testified that he experienced significant
emotional distress following the September 11, 2001 terrorist
attacks.  Because of the attacks, he dropped out of school, he
re-enlisted in the military, and he sent an e-mail to
approximately 50 people stating that he wanted to "hi-jack an

enemy plane" and "crash it into the heart and soul of that enemy's religion, country, cities and people."  He drafted a proposed amendment to the U.S. Constitution, which he attached to the e-mail, calling for the detention and deportation of non-Americans from the United States.  He told other students that he intended to bring a 9 mm weapon to school.  He was detained by campus police and questioned because of the e-mail and gun threat.  (See id., Ex. B (Vol. 2 – 108:2-110:17 (e-mail and gun threat), Vol. 2 - 111:1-13 (detention by officers), 112:4-113:14 (e-mail), 114:5-21 (proposed constitutional amendment)), Ex. M, and Ex. N; Lopez Decl., ¶¶ 16-17.)

### iii. Failure To Obtain Clearance

Plaintiff testified that he repeatedly discussed his application for a security clearance with his chain of command and that his chain of command's conduct in relation to his application caused him serious emotional distress.  (See Concise Statement, Ex. B (Vol. 2 – 254:16-255:1).)  He claims his chain of command lied to him repeatedly concerning his application.  (See id., Ex. B (Vol. 2 – 256:6-257:20, 289:4-22, 290:25-291:18, 293:2-294:11).)  He said the day he learned his chain of command allegedly lied to him and told him his application had been stopped because of his medical discharge was a "key day" in his life in terms of his emotional distress.  (See id., Ex. B (Vol. 2 – 258:14-24).)  In fact, Plaintiff conceded that all of his

24

emotional distress post-February 2002 was the result of having been denied the air traffic controller position and <u>had he obtained that position, he would not be involved in this litigation today</u>.  (<u>See</u> <u>id.</u>, Ex. B (Vol. 2 – 279:6-14).)

### iv.  Discrimination By and Other Negative Experiences With Other Soldiers in His Battalion

Plaintiff admits that almost from the start of his re-enlistment in the Army in 2002 through his discharge in late 2004, he was continually subjected to discrimination, mockery, and name calling by other soldiers and persons in his chain of command in the military.  (<u>See</u> <u>id.</u>, Ex. B (Vol. 2 - 214:3-215:2), and Ex. O; Lopez Decl., ¶ 18.)  He claims he witnessed numerous alleged violations of the Uniform Code of Military Justice that disturbed him, including other soldiers speaking foreign languages while in uniform which he reported and which made him unhappy.  (<u>See</u> Concise Statement, Ex. B (Vol. 2 - 272:12-274:5, 274:18-275:2) and Ex. O.)  Plaintiff believes his fellow soldiers and chain of command were lying to him and denying him information, all of which caused him emotional distress.  (<u>See</u> <u>id.</u>, Ex. B (Vol. 2 – 276:13-24).)  Plaintiff admits that his experiences in the military between July 2002 and September 2004 caused him intense emotional distress.  (<u>See</u> <u>id.</u>, Ex. B (Vol. 2 - 216:9-18).)

     **v.   Involuntary Admittance To Mental Ward
On March 3, 2004 and August 4, 2004
While In Military**

According to the military records Plaintiff produced in this litigation, on March 3, 2004, Plaintiff allegedly threatened to kill someone during an interview with persons within his chain of command.  He was disciplined for his statement, including involuntary detention in a military mental ward for a 24-hour period and his weapons were removed from his quarters.  (See id., Ex. B (Vol. 2 - 226:14-229:1, 310:25-313:11, 319:12-320:10, 320:22-321:8 (weapons removal)) and Ex. P; Lopez Decl., ¶ 19.)  Plaintiff was told by the military that he was a risk to himself and others.  Plaintiff admits this statement by the military caused him emotional distress.  (See id., Ex. B (Vol. 2 – 316:15-317:5, 328:21-329:25) and Ex. P.)

### vi.  Court Martial

On or about March 3, 2004, the military recommended Plaintiff for an Article 15 discharge.  Plaintiff opted for a court martial instead (which the military ultimately did not pursue).  Plaintiff admits these events caused him emotional distress.  (See id., Ex. B (Vol. 2 – 295:8-296:20.)

### vii. Demotion

At or about the time of his medical discharge, Plaintiff admits the military demoted him and that the demotion caused him emotional distress.  (See id., Ex. B (Vol. 2 – 322:21-323:14).)

### viii. Negative Written Evaluations From Military Between March 2002 and September 2004

The military documents produced by Plaintiff in this action show that he received several negative evaluations between March 2002 and September 2004, all of which Plaintiff admits caused him emotional distress. (See <u>id.</u>, <u>e.g.</u>, Ex. B (Vol. 2 – 298:24-299:15, 300:18-301:25) and Ex. Q; Lopez Decl., ¶ 20.)

### ix. Divorce From Second Wife

Plaintiff testified that he divorced his second wife in late 2004. Plaintiff alleges that his credit issues "contributed" to his divorce, however, when asked whether his wife ever told him if his discharge from the military had a negative impact on his marriage, he coyly responded: "She may have told me that." (See <u>id.</u>, Ex. B (Vol. 2 - 209:6-21).) Plaintiff further testified that his divorce caused him emotional distress. (See <u>id.</u>, Ex. B (Vol. 2 - 218:18-22).)

### e. Plaintiff Disclosed All Of His Alleged Credit Problems And Personal Problems In A Book He Wrote And Published Entitled "Liberty For None And Injustice For All"

In October 2005, Plaintiff, through Book Surge LLC, published a book entitled <u>Liberty For None And Injustice For All</u>. (See Defendant Trans Union LLC's Request for Judicial Notice.) Among other things, this book purportedly details the alleged inaccuracies reported by Trans Union and Experian and

Plaintiff's experiences in the military from 2002 through 2004, including his inability to obtain his military security clearance.

Plaintiff maintains a website at http://www.jerryeller.com, which he admitted at his deposition. (See id., Ex. B (Vol. 2 - 148:14-18).) Liberty For None And Injustice For All is available for purchase for $9.95 through that website. There is no bar on who may purchase the book and nowhere in the PayPal purchase link does it inquire as to the purpose of the purchase. (See Lopez Decl., ¶ 21.)

Plaintiff has made claims in this litigation that he has been defamed, embarrassed, feels shame, anger, etc., as a result of the alleged inaccuracies allegedly reported on his Trans Union and Experian credit report. However, Plaintiff through his book has published information concerning the alleged inaccuracies to the world at large. Obviously, if Plaintiff is willing to publish this personal credit and military employment information to the world in his book, then he must not be concerned about his privacy or avoiding any shame, embarrassment, or other ill feelings toward him resulting from the alleged inaccurate credit reporting.

///

///

### 3. Plaintiff Has No Credit Denials Based On A Trans Union Report

Plaintiff has not produced evidence that he has been denied credit based on a Trans Union credit report.

### 4. Plaintiff's Post-February 2002 Claims Concerning Any Harm to His Military Employment Or Inability To Obtain A Security Clearance

#### a. Plaintiff Stipulated To Drop All Post-February 2002 Claims Related to Military Employment Or Denial of His Security Clearance

On September 15, 2005, during Plaintiff's deposition, Plaintiff's counsel placed the following stipulation on the record:

> MR. SOLA:  Let me say for the record.
> I've talked to my client about his claims,
> and I wasn't sure where you were going with
> these claims, and we may—and I think we are
> dropping claims related to the military.
> Okay.  But I do want to talk to him, now
> that you're getting into even more about it,
> to clarify exactly what we are claiming and
> what we aren't claiming.

> [RECESS TAKEN TO ALLOW MR. SOLA
>     TO CONFER WITH PLAINTIFF]

> MR. SOLA:  Yeah.  What I wanted to say
> is, as stated in our interrogatory response
> to Experian, the claim—there's a claim that
> Mr. Eller did not get the Army job that he
> sought, which was an air traffic controller
> job, and that he was told he didn't get
> around February 20, 2002.  And we're not
> making any claim—and then he joined the
> military on March 12th, I think, 2002.

29

<u>We're not making any claim for any</u>
<u>later military employment or denials or</u>
<u>clearances.</u>

And there have been many questions
dealing with top security clearance and the
reasons that was or was not approved or
withdrawn or denied, all of which occurred
much later, including in 2003.

And so we don't believe any of that is
relevant to the claim or the denial of the
air traffic controller job because it had
nothing to do with the air traffic
controller job.

And I think there's a dispute about the
relevancy and whether there should be
discovery on that issue.

(<u>See</u> Concise Statement, Ex. K (Vol. 1 - 92:22-93:4, 94:14-95:9)

(emphasis added).)[5]

### b. Plaintiff Was Informed That His Security Clearance Application Was Stopped Because Of His Impending Medical Discharge

Even if Plaintiff, through his counsel, had not stipulated

to the dismissal of his post-February 2002 claims concerning his

security clearance, Trans Union cannot be held liable for those

claims because Plaintiff admits that Captain Michael Voss

notified Plaintiff in December 2003 that his security clearance

---

[5]    Messrs. Bradley and Behrendt, counsel for Trans Union and Experian, respectively, stated on the record that discovery concerning all aspects of Plaintiff's military employment was relevant to the claims in this litigation because of the air traffic controller claim and Plaintiff's emotional distress claim, among other things.  (<u>See</u> <u>id.</u>, Ex. K (Vol. 1 - 95:10-97:8).)

was being stopped because he was being discharged for medical reasons.  (See id., Ex. K (Vol. 1 - 69:25-70:10) and Ex. B (Vol. 2 - 252:21-253:19).)

> **c.  Plaintiff Likely Would Have Been Denied the Security Clearance Even If Were Not Stopped Because He Admittedly Lied Repeatedly On His Application, Had A History Of Alleged Violence And Criminal Behavior, And There Were Numerous Discrepancies In Interviews Given By Third Parties Compared To Statements He Made In His Application**

Plaintiff admitted during his deposition that he made numerous false statements on his security clearance application. Among other things, Plaintiff lied when he said he had never been fired from a job in the prior 10 years, lied that he had never been a party to a civil suit in the prior 10 years, and lied about contacts with foreign nationals.  (See id., Ex. B (Vol. 2 - 12:2-16:5 (prior termination), 28:18-29:10 (party to civil suit), 54:10-16 (foreign national)), Ex. R and Ex. S; Lopez Decl., ¶¶ 22-23.)

The military interviewed numerous witnesses concerning Plaintiff's statements in his security clearance application and his character in general.  (See id., Ex. T; Lopez Decl., ¶ 24.) The interviewer(s) noted numerous discrepancies between the interviewees' statements and Plaintiff's statements in his application.  (See id.)  Plaintiff admits that the military interviewed these third parties in order to make a decision on

31

his security clearance application.  (See id., Ex. B (Vol. 2 - 99:3-10).)

Plaintiff admits that his threatening behavior post-September 11, 2001, described above, was reported to the military during third party interviews conducted in connection with his security clearance application.  (See id., Ex. B (Vol. 2 - 110:18-25).)

The military also obtained a copy of Plaintiff's ex-wife's ex parte application for a temporary restraining order describing how Plaintiff allegedly physically attacked his ex-wife during their divorce and how he improperly withdrew funds from their joint bank accounts.  (See id., Ex. B (Vol. 2 - 123:18-126:18) and Ex. U; Lopez Decl., ¶ 25.)

The military also obtained a copy of a criminal record indicating that Plaintiff had been arrested for theft of firewood in Crested Butte, Colorado, and served two days in jail for that offense.  (See id., Ex. B (Vol. 2 - 136:7-138:1) and Ex. V; Lopez Decl., ¶ 26.)

Based on the foregoing, Trans Union has shown that Plaintiff has not and cannot come forward with any credible evidence of recoverable damages.  As such, all of Plaintiff's causes of action against Trans Union must fail.  Trans Union therefore respectfully requests that the Court grant summary judgment in its favor and against Plaintiff.

## V.  <u>CONCLUSION</u>

Based on the foregoing points and authorities, Trans Union respectfully requests that the Court grant its Motion for Summary Judgment, Or, In The Alternative, Summary Adjudication and enter judgment as appropriate in its favor and against Plaintiff.

DATED:    Honolulu, Hawaii, January 13, 2006.


                              PRICE, OKAMOTO, HIMENO & LUM


                              By:  /s/ Robert M. Kohn
                                   Kenneth T. Okamoto
                                   Robert M. Kohn
                                   Attorneys for Defendant
                                   Trans Union LLC

Of Counsel:
PRICE OKAMOTO HIMENO &  LUM
Attorneys at Law
KENNETH T. OKAMOTO, ESQ. 2068
ROBERT M. KOHN, ESQ.     6291
707 Richards Street, Suite 728
Honolulu, Hawaii 96813
Telephone: (808) 538-1113
Fax: (808) 533-0549
Email:   rkohn@pohlhawaii.com

CROWELL & MORING LLP
Attorneys at Law
DONALD E. BRADLEY, ESQ. (*pro hac vice*, Cal. Bar No. 145037)
THERESA C. LOPEZ, ESQ. (*pro hac vice*, Cal. Bar No. 205338)
3 Park Plaza, 20th Floor
Irvine, California 92614-8505
Telephone:  (949) 263-8400
Email:   dbradley@crowell.com
         tlopez@crowell.com

Attorneys for Defendant
TRANS UNION LLC

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GERALD H. ELLER,<br><br>               Plaintiff,<br><br>   v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation; TRANS UNION LLC, a foreign corporation; BANK ONE CORPORATION, a foreign corporation,<br><br>               Defendants. | CIVIL NO. 04-CV-174 DAE KSC<br><br>CERTIFICATE OF SERVICE RE: DEFENDANT TRANS UNION LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION<br><br>Action Filed:  12/17/2003 |

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 13, 2006 and by the methods of service noted below, a true and correct copy of DEFENDANT TRANS UNION LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION was served upon the following parties at their last known addresses:

| | |
|---|---|
| Norman K.K. Lau, Esq.<br>Attorney at Law<br>820 Mililani Street<br>Suite 701<br>Honolulu, Hawaii 96813<br>Fax:  (808) 523-6769<br>**BY HAND DELIVERY** | Scott K. Behrendt, Esq.<br>Jones Day<br>555 South Flower Street<br>Fiftieth Floor<br>Los Angeles, California 90071<br>*Served Electronically through*<br>*CM/ECF skbehrendt@jonesday.com* |
| Robert S. Sola, Esq.<br>Attorney at Law<br>8835 S.W. Canyon Lane<br>Suite 130<br>Portland, Oregon 97225<br>Fax:  (503) 291-9172<br>**BY OVERNIGHT MAIL** | Deborah K. Wright, Esq.<br>Keith D. Kirschbraun, Esq.<br>Wright & Kirschbraun<br>1885 Main Street, Suite 108<br>Wailuku, Hawaii 96793-1827<br>*Served Electronically through*<br>*CM/ECF wrightkirsch@aol.com* |
| Attorneys for Plaintiff<br>Gerald H. Eller | Attorneys for Defendant<br>Experian Information<br>Solutions, Inc. |

DATED:  Honolulu, Hawaii, January 13, 2006.

PRICE, OKAMOTO, HIMENO & LUM

By:  /s/ Robert M. Kohn
    Kenneth T. Okamoto
    Robert M. Kohn
    Attorneys for Defendant
    Trans Union LLC

3715131v1(087827.0000301)