# DEFENDANT TRANS UNION LLC'S CONCISE STATEMENT OF MATERIAL FACTS AND EVIDENCE

# EXHIBIT "K"

**COPY**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

GERALD ELLER,

     Plaintiff,

vs.     Case No. CV 04-00174 DAE-KSC

EXPERIAN INFORMATION SOLUTIONS, INC.,
a foreign corporation; TRANS UNION LLC,
a foreign corporation; and BANK ONE
CORPORATION, a foreign corporation,

     Defendants.



VIDEOTAPED DEPOSITION OF GERALD H. ELLER
TAKEN ON BEHALF OF THE DEFENDANT EXPERIAN
SEPTEMBER 15, 2005

- - -

   BE IT REMEMBERED THAT, pursuant to the Federal Rules
of Civil Procedure, the videotaped deposition of Gerald
H. Eller was taken before Gary W. Koch, a Certified
Shorthand Reporter, and a Notary Public for the State of
Oregon, on Thursday, September 15, 2005, commencing at
the hour of 9:06 a.m., the proceedings being reported at
Stoel Rives, 900 SW 5th Avenue, Suite 2600, Portland,
Oregon.



1        A.    He said, "The colonel was stopping your

2    clearance," quote, unquote.

3        Q.    Okay.

4        A.    Colonel Devin Daley, lieutenant colonel.

5        Q.    Captain Von told you that?

6        A.    Captain Voss, Captain Michael Voss told me

7    that on December 9th, 2003, correct, I believe.

8             MR. BRADLEY:   I think your prior testimony

9    was 2002.

10            THE WITNESS:   Yeah, I think it needs to be

11   corrected.   2003.

12   BY MR. BEHRENDT:

13       Q.    December of 2003?

14       A.    I believe so, yes.  December 9th, 2003.

15       Q.    Captain Voss --

16       A.    I was discharged in 2004, correct?

17   September 2004?

18       Q.    Well, that's -- that's what I'm asking

19   you.  When?

20       A.    December of 2003.

21       Q.    Okay.

22       A.    Correct.

23       Q.    All right.  And --

24       A.    Captain Michael Voss.

25       Q.    So the investigation that was begun to

**NAEGELI
REPORTING
CORPORATION**

**800.528.3335**
**www.NaegeliReporting.com**
**503.227.7123 FAX**

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376          509.838.6000          208.667.1163

Court Reporting          Trial Presentation          Videoconferencing          Videography

1    determine whether or not you should receive top

2    security clearance from the U.S. Government, that

3    investigation was stopped, according to Michael

4    Voss, and he told you that in December of 2003?

5         A.   Correct.

6         Q.   And he told you that was because you were

7    being discharged?

8         A.   Correct.

9         Q.   And why were you being discharged?

10        A.   For medical reasons.

11        Q.   And what medical reason is that?

12        A.   Left hip and lower back.

13        Q.   And what about your left hip and lower

14   back?

15        A.   I need a hip replacement in my left hip,

16   and I have degenerative disk and compressed

17   vertebrae in my lower back.

18        Q.   And those were -- so, in fact, you never

19   had top security clearance, only an investigation to

20   get top security clearance?

21        A.   I had an interim top secret security

22   clearance.

23             These are all questions that the federal

24   government needs to answer, because I'm still

25   attempting to get the official answers from the



**NAEGELI**
**REPORTING**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA       Coeur d'Alene, ID
503.227.1544       206.622.3376       509.838.6000       208.667.1163

Court Reporting     Trial Presentation    Videoconferencing     Videography

1   documentation.

2           MR. BRADLEY:  If you're going to sue

3   somebody that's not something in the military --

4           MR. SOLA:  Mr. Eller, please don't --

5           MR. BRADLEY:  -- you have to produce the

6   information.

7           MR. SOLA:  This is not an open discussion,

8   and --

9           THE WITNESS:  This is absurd.

10          MR. SOLA:  Are you going to take a break?

11  You've made your explanation.  Can we take a break?

12          MR. BEHRENDT:  Well, I wanted -- and I

13  think Don has hit upon it.  I just want it to be

14  clear.  Why we we're asking these, why we're asking

15  about the documents, because those claims have been

16  brought into this lawsuit, and that's why that's

17  important.

18          So unless you were taking the position

19  that Experian had, you know, caused you no harm

20  during the period of time that you were in the

21  military, this is, you know, important information.

22          MR. SOLA:  Let me say for the record, I've

23  talked to my client about his claims, and I wasn't

24  sure where you were going to go with these claims,

25  and we may -- and I think we are dropping claims



**NAEGELI**
**REPORTING**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
**503.227.7123 FAX**

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376         509.838.6000         208.667.1163

Court Reporting       Trial Presentation   Videoconferencing    Videography

Gerald H. Eller

```
 1   related to the military.  Okay.  But I do want to
 2   talk to him, now that you're getting into it even
 3   more about it, to clarify exactly what we are
 4   claiming and what we aren't claiming.
 5              MR. BEHRENDT:  Okay.  So --
 6              MR. SOLA:  Can we take a break so I may
 7   discuss with him what we want to do?
 8              MR. BEHRENDT:  About dropping the
 9   claims --
10              MR. SOLA:  Yes.
11              MR. BEHRENDT:  -- related to the military?
12              MR. SOLA:  And so he can use the bathroom.
13              MR. BEHRENDT:  You know, Don's joined the
14   notice, and I'd confer Don too on this, what his
15   opinion may be.
16              MR. BRADLEY:  That's fine.  Let's take a
17   break.
18              MR. BEHRENDT:  Okay.
19              THE VIDEOGRAPHER:  10:58 a.m.  We're off
20   the record.  This is the end of tape number 1.
21              THE REPORTER:  What time, Mike?
22              THE VIDEOGRAPHER:  10:58.
23              (Recess)
24              THE VIDEOGRAPHER:  We are back on the
25   record.  The time is 11:48 a.m.  This is the
```

NAEGELI
REPORTING
CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA       Coeur d'Alene, ID
503.227.1544       206.622.3376      509.838.6000        208.667.1163

Court Reporting      Trial Presentation      Videoconferencing       Videography

1    beginning of tape number 2 in the deposition of

2    Gerald H. Eller.  We are back on the record.

3          MR. BEHRENDT:  Just briefly, we broke, I

4    believe, 10:58, according to the videographer,

5    about, Pacific Time, so Mr. Sola could speak with

6    his client.  Approximately 39 or 40 minutes later he

7    came back in the room, and we spent the last several

8    minutes discussing some discovery, and apparently

9    substantive issues, and I believe everybody is going

10   to make some statements for the record and then

11   we'll move forward.

12          Robert, did you want to say anything about

13   your client's claims?

14          MR. SOLA:  Yeah.  What I wanted to say is,

15   as stated in our interrogatory response to Experian,

16   the claim -- there's a claim that Mr. Eller did not

17   get the Army job that he sought, which was an air

18   traffic controller job, and that he was told he

19   didn't get around February 20, 2002.  And we're not

20   making any claim -- and then he joined the military

21   on March 12th, I think, 2002.

22          We're not making any claim for any later

23   military employment or denials or clearances.

24          And there have been many questions dealing

25   with top security clearance and the reasons that was



**NAEGELI**
**REPORTING**
**C O R P O R A T I O N**

**800.528.3335**
www.NaegeliReporting.com
**503.227.7123 FAX**

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376        509.838.6000        208.667.1163

Court Reporting    Trial Presentation    Videoconferencing    Videography

1    or was not approved or withdrawn or denied, all of

2    which occurred much later, including in 2003.

3              And so we don't believe any of that is

4    relevant to the claim or the denial of the air

5    traffic controller job because it had nothing to do

6    with the air traffic controller job.

7              And I think there's a dispute about the

8    relevancy and whether there should be discovery on

9    that issue.

10             MR. BRADLEY:   Okay.  And as for

11   TransUnion, that may well be Mr. Sola and his

12   client's current position with respect to the claims

13   in the case.  However, at some point at least in the

14   context of this case there were other claims related

15   to the alleged impact of credit reporting issues on

16   Mr. Eller's military employment beyond what Mr. Sola

17   has just said are the issues.  Certainly there were

18   issues raised in prior correspondence that we have

19   seen produced in the case.

20             Further, to the extent there's any impact

21   alleged on Mr. Eller's military employment or any

22   employment based on credit reporting issues, all

23   aspects of his employment with that particular

24   employer are relevant to the case.

25             Moreover, to the extent he is claiming any



**NAEGELI**
**REPORTING**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
**503.227.7123 FAX**

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544        206.622.3376        509.838.6000          208.667.1163

Court Reporting      Trial Presentation      Videoconferencing      Videography

1    position February 17th, 2002, and did you in fact

2    get the position?

3         A.    I was told, and then actually no, I did

4    not.  I was verbally told and then later verbally

5    told that I did not get the position.

6         Q.    And who told you you did not get -- when

7    were you told that you did not get the position?

8         A.    On February 20th, 2002.

9         Q.    Didn't you indicate a moment ago that you

10   were told that you got the position in March --

11        A.    Correct.

12        Q.    --of 2002?

13        A.    No, February 17th of 2002 I was told that

14   I did get the position.

15        Q.    And when were you told that you did not

16   have the position?

17        A.    On February 20th, 2002.  I believe

18   February 20th, 2002.

19        Q.    And who told you that?

20        A.    I do not know the name, but they were a

21   mas -- a female master sergeant in the United States

22   Army.  I don't recall her name.  And another

23   sergeant, actually, a male sergeant first class

24   reiterated or -- one of them told me first, or told

25   me simultaneously, or --



NAEGELI
REPORTING
CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376       509.838.6000       208.667.1163

Court Reporting      Trial Presentation      Videoconferencing      Videography

Gerald H. Eller

```
 1        Q.    They tell you in person?

 2        A.    Correct.

 3        Q.    Where were you when they told you?

 4        A.    I was at the Denver Military Entrance

 5   Processing Station, downtown Denver, Colorado.

 6        Q.    And did they tell you why you did not get

 7   the position?

 8        A.    Correct.

 9        Q.    And what did they state was the reason?

10        A.    They stated verbally the reason was

11   because my flight four physical was not approved.

12   The waiver that I requested -- I request -- I had to

13   request a waiver to get my flight four physical

14   approved.

15        Q.    And it was not in fact approved?

16        A.    The waiver was not approved, according to

17   them verbally.

18        Q.    Did they tell you any other reason why you

19   weren't given the position?

20        A.    They verbally told me my flight four

21   physical waiver had been not been approved.

22        Q.    So "yes" or "no," did they tell you any

23   other reason why you did not get the position?

24        A.    They stated the reason why I did not get

25   the position as air traffic controller was that my
```



**NAEGELI REPORTING CORPORATION**

**800.528.3335**
**www.NaegeliReporting.com**
**503.227.7123 FAX**

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376          509.838.6000          208.667.1163

Court Reporting          Trial Presentation          Videoconferencing          Videography

Gerald H. Eller

1   flight four physical waiver was not approved.

2        Q.   Okay.  And just to move on in this

3   deposition, would you please answer "Yes" or "No,"

4   did they tell you there was any other reason why you

5   did not get the position?

6        A.   Can you give me an example of another

7   reason?

8             MR. BRADLEY:  He's asking you, was there

9   or wasn't there?

10            THE WITNESS:  The reason why I was not

11  given the flight -- the air traffic controller

12  position was that my waiver for the flight four

13  physical did not get approved.

14            MR. BEHRENDT:  Okay.

15            THE WITNESS:  There's a whole process that

16  the military goes through to give you an air traffic

17  controller job.  You need a flight four -- you need

18  to pass a flight four physical.

19  BY MR. BEHRENDT:

20       Q.   And, obviously, we're trying to move this

21  deposition along, but I wanted to know, Mr. Eller --

22  and rather than have the court reporter read it back

23  I'll just ask you again -- were you told that there

24  was any other reason why you did not get that

25  position?  "Yes" or "no."  Were you told any other

**NAEGELI
REPORTING**
C O R P O R A T I O N

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544       206.622.3376      509.838.6000       208.667.1163

Court Reporting       Trial Presentation       Videoconferencing       Videography

```
 1    reason?

 2         A.   I don't understand the question.   I

 3    don't --

 4         Q.   Well, other than being told that you did

 5    not get the position because your flight four

 6    physical was not approved, were you told that there

 7    was any other reason you did not --

 8         A.   Because of race?  Gender?

 9              MR. BRADLEY:  Anything else.

10              THE WITNESS:  Religion?  Attire?

11    BY MR. BEHRENDT:

12         Q.   Would you tell us --

13         A.   Mental capability?  Physical capability?

14    I mean --

15         Q.   Did anyone say that to you?

16         A.   No.  They said I did not receive it

17    because of my flight four physical waiver was not

18    approved.

19         Q.   And there was no other reason given?

20         A.   Not verbally, no.

21         Q.   Okay.  Was any reason given to you in

22    writing?

23         A.   No.

24         Q.   Okay.  Was any --

25         A.   Not at all.
```



NAEGELI
REPORTING
CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

| Portland, OR | Seattle, WA | Spokane, WA | Coeur d'Alene, ID |
| 503.227.1544 | 206.622.3376 | 509.838.6000 | 208.667.1163 |
| Court Reporting | Trial Presentation | Videoconferencing | Videography |

```
 1   that they were reporting inaccurate and untruthful
 2   information about me on February 20th, 2002.
 3        Q.   But you have been --
 4        A.   2002, correct.
 5        Q.   But you have no reason to believe that
 6   Experian was any way responsible for you not getting
 7   the air traffic controller position?
 8        A.   Yes, I do.
 9        Q.   Okay.  And what's the reason for that
10   belief?
11        A.   Because when they were conducting my
12   flight four physical and my investigation, they
13   inquired in my credit report.  The federal
14   government made an inquiry on my credit report.
15        Q.   Okay.  But you were never told that
16   anything in your credit report kept you from getting
17   this position?
18        A.   Not specifically, no.
19        Q.   Or generally?
20        A.   Yes, generally.  I would assume that --
21   when I applied for the position in September I was
22   required to sign a credit release giving the federal
23   government permission to check my credit report.
24        Q.   So other than your assumption that your
25   credit report somehow played a role in getting this
```



NAEGELI
REPORTING
C O R P O R A T I O N

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376         509.838.6000         208.667.1163

Court Reporting      Trial Presentation     Videoconferencing      Videography

1     A.    Because I felt I was being discriminated

2     against for my race, my disability, and/or my age.

3     Q.    Okay.  And what was the result of that

4     complaint?  What came of it?

5     A.    I was verbally told that certain --

6     certain findings were unjust or not determined,

7     whatever would be the correct word, and then I was

8     physically told that many of my claims and

9     determinations were founded and others were not

10    founded.

11    Q.    And in what respect do you believe you

12    were discriminated against?

13    A.    I believed I was being discriminated

14    against because I did not have my clearance and my

15    chain of command took my clearance from me.

16    Q.    Okay.

17    A.    And all the people that I worked with that

18    were 74 Charlie telecommunication

19    operator-maintainers all had their clearance and I

20    didn't.

21    Q.    And you think that may have been as a

22    result of your gender?

23    A.    I questioned that, yes.

24    Q.    Your race as well?

25    A.    Correct.

**NAEGELI**
**REPORTING**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
**503.227.7123 FAX**

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376         509.838.6000         208.667.1163

Court Reporting          Trial Presentation          Videoconferencing          Videography

```
 1        Q.    Your age?

 2        A.    And age, physical disability, correct.

 3        Q.    And your physical disability?

 4        A.    Correct.

 5        Q.    Nowhere in that complaint is there -- and

 6   I haven't seen the complaint, but I'm going to ask

 7   you -- nowhere in the complaint is there mention of

 8   your credit report?

 9        A.    Not that I recall, no.

10        Q.    And you don't make that claim?

11        A.    Well, that was the basis for the claim of

12   discrimination, because I knew of other activities

13   that people I was working with that were violating

14   UCMJ Army regulations.

15        Q.    What were they doing?

16        A.    They were using government property

17   without permission for personal use.  They were

18   being convicted of speculative crimes, such as

19   sexual harassment, domestic abuse.  There was a lot

20   of --

21        Q.    So --

22        A.    -- a lot of racial terms being used --

23        Q.    All right.

24        A.    -- in the workplace.

25        THE REPORTER:   "In the workplace."
```

**NAEGELI**
**REPORTING**
C O R P O R A T I O N

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376       509.838.6000        208.667.1163

Court Reporting     Trial Presentation     Videoconferencing     Videography

1      Q.    Okay.  Mr. Eller, welcome back.  Before we

2   broke for lunch we were talking about the March

3   20th, 2002 letter prepared by your counsel at the

4   time, Michael Kleinman, to Experian regarding your

5   disputes with certain information.  Before we get

6   into that, though, I wanted to ask you, could you

7   tell us what specifically a flight four physical is?

8      A.    It's -- it's the military -- in the

9   aviation branch everyone involved has an extra

10  physical requirement, like pilots, air tra --

11  mechanics, anyone dealing with aviation equipment

12  and industry due to physical requirements, i.e.,

13  eyesight, hearing, ability not to pass out or -- you

14  know, you need to meet certain physical requirements

15  above and beyond normal jobs like a truck driver or

16  a cook or an infantry person.

17     Q.    And you underwent a flight four physical?

18     A.    Correct.

19     Q.    And what happened?

20     A.    I flunked the hearing test.

21     Q.    Okay.  As hearing would be an important

22  part of becoming an air traffic controller, correct?

23     A.    Correct.  It was one frequency in my left

24  ear that didn't reach or meet the military

25  requirements.  However, had I been an air traffic



NaeGeLi
Reporting
C O R P O R A T I O N

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376        509.838.6000        208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

Gerald H. Elfer

```
 1   controller, it wouldn't have disqualified me or

 2   caused me to be terminated.

 3        Q.   But it did prevent you from becoming one

 4   in the first place?

 5        A.   Right, because the -- the training that's

 6   required, they'd have to spend a lot of money.  So

 7   if I had already been an air traffic controller, I

 8   would not have been terminated due to my hearing

 9   loss because it wasn't that substantial.  However,

10   it didn't qualify me either for an initial entry

11   position.

12        Q.   And that's -- and that's the reason given

13   to you by the military for not passing the flight

14   four physical?

15        A.   Well, I got a waiver.  Just because you

16   didn't pass -- you can get a waiver.  And then the

17   board in Fort Rucker, Alabama, convenes and meets

18   the waive -- it looks to determine the waiver.  And

19   they determine other issues, like criminal

20   background, ability to get a clearance, education

21   level, test scores, physical capabilities.

22        Q.   And in your case the flight four physical

23   waiver was not approved?

24        A.   According verbally to the people at the

25   MEF station, yes.
```



**NaegeLi
Reporting**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
**503.227.7123 FAX**

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376          509.838.6000          208.667.1163

Court Reporting          Trial Presentation          Videoconferencing          Videography

Gerald H. Eller

1      Q.   Okay.  And that's the reason why you

2    didn't become an air traffic controller for the

3    military, correct?

4              MR. SOLA:  Object, vague.

5              THE WITNESS:  That was the verbal reason

6    given to me on February 20th, yes, I guess.

7    BY MR. BEHRENDT:

8      Q.   Okay.

9      A.   Because I failed the flight four physical.

10     Q.   Okay.  Let's go ahead and jump forward.

11   And thank you for revisiting that topic with me, by

12   the way.  Let's go ahead and jump forward to where

13   we were, which was we were talking about that March

14   20th, 2002 letter to Experian.  And on or about

15   April 4th, 2002, Experian responded to that March

16   20th -- that letter dated March 20th, 2002.  Is that

17   your understanding?

18     A.   I don't know.

19             MR. BEHRENDT:  Okay.  I'm going to go

20   ahead and provide to you a document Bates labeled

21   EXP00067, and ask that the court reporter at his

22   convenience mark that as the next exhibit in order.

23   Exhibit 7?

24             (Whereupon, a credit report was marked

25   Exhibit-7 for identification.)

**NAEGELI**
**REPORTING**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
**503.227.7123 FAX**

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376       509.838.6000        208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

```
 1   have been provided to you from the federal

 2   government.

 3        Q.   Do you have any other documents at home or

 4   any other place other than what we've talked about

 5   that support your claims for damages against

 6   Experian?

 7        A.   I may.

 8        Q.   Okay.  How soon can you get those

 9   documents to Mr. Bradley and me?

10        A.   If I have any, as soon as I can get back

11   to Colorado and get them copied or mailed.  Again, I

12   don't know what may or may not be relevant.

13        Q.   Have you ever -- you talked about your

14   mental distress.  Did you ever see a doctor about

15   your emotional distress that you attribute to

16   Experian?

17        A.   Officially on the record?

18        Q.   Or in any manner.

19        A.   I did attempt to seek mental aid, I guess.

20   I inquired about it.

21        Q.   When was that?

22        A.   That was in November of 2000.

23        Q.   And where did you go?

24        A.   To the Denver Veterans Administration

25   Mental Therapy -- Mental -- Mental Health Services.
```



**NAEGELI**
**REPORTING**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
**503.227.7123 FAX**

| Portland, OR | Seattle, WA | Spokane, WA | Coeur d'Alene, ID |
| 503.227.1544 | 206.622.3376 | 509.838.6000 | 208.667.1163 |
| Court Reporting | Trial Presentation | Videoconferencing | Videography |

Gerald H. Eller

1    Q.   And what happened?

2    A.   They said I didn't qualify for treatment.

3    Q.   Have you ever been evaluated regarding --

4    by a doctor or other professional -- regarding your

5    emotional distress?

6         MR. SOLA:  I'm going --

7         THE WITNESS:  With the credit case?

8         MR. SOLA:  Well, I'm going -- I want to

9    interject.  We're not claiming anything the

10   defendants did required any medical treatment.

11   So --

12        MR. BEHRENDT:  Okay.

13        MR. SOLA:  So I think it's doctor-patient

14   privilege.  I'm going to assert the privilege, if

15   you want to get into doctor stuff, because we're not

16   claiming anything related to doctors.

17   BY MR. BEHRENDT:

18   Q.   Is that true?

19   A.   I mean, yeah.

20   Q.   Okay.  Does the name Pam Staves ring a

21   bell?  Pam, last name Staves --

22   A.   Correct.

23   Q.   -- S-t-a-v-e-s?

24   A.   Correct.

25   Q.   Is that the person that you attempted to

NAEGELI REPORTING CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544       206.622.3376      509.838.6000       208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

```
 1   consult with?

 2        A.    Correct.

 3        Q.    And you never ultimately did consult with

 4   her?

 5        A.    Yes, I did consult with her, but she

 6   decided that there was nothing wrong with me.

 7        Q.    Okay.  Who's Bill Sasz, S-a-s-z?

 8        A.    Sasz, Bill Sasz?

 9        Q.    Yeah.

10        A.    He's an attorney and the owner of Jack

11   Quinn's Restaurant & Bar, Colorado Springs,

12   Colorado.

13        Q.    And do you believe he may have any

14   information relevant to this case?

15        A.    He may or may not.

16        Q.    And what information may he have?

17        A.    He may have -- he may have information

18   concerning Robert Mason, and I was his employee.

19        Q.    Okay.

20        A.    He was my employer.  So he may -- we've

21   had personal and private conversations regarding my

22   legal situation, and so he may be able to testify to

23   my emotional state and my mental state as far as my

24   emotional.

25        Q.    And the emotional distress that you
```

**NAEGELI**
**REPORTING**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
**503.227.7123 FAX**

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376       509.838.6000       208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

```
 1              MR. BRADLEY:  That's fine.

 2              MR. SOLA:  All right.

 3              MR. BEHRENDT:  We're on, of course.

 4    BY MR. BEHRENDT:

 5        Q.   Mr. Eller, I want -- I want to step back a

 6    moment and ask you, are you on any medication today?

 7        A.   No.

 8        Q.   Have you taken any medication?

 9        A.   No.

10        Q.   Have you had any drugs or alcohol today?

11        A.   No.

12        Q.   Is there any reason why you have not been

13    able to answer questions truthfully today?

14        A.   I object.  I mean I object to that.  I've

15    been answering --

16        Q.   Let me -- let me rephrase it.  Is there

17    any reason why -- anything preventing you from

18    testifying accurately today?

19        A.   Not -- no, there shouldn't be.  I mean

20    shouldn't be, no.

21        Q.   Okay.  All right.

22        A.   If I did testify inaccurately.

23        Q.   Okay.  Pam Staves we talked about earlier.

24    When did you go to meet with her?

25        A.   I believe it was in November of 2000.
```

NAEGELI REPORTING CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376         509.838.6000         208.667.1163

Court Reporting       Trial Presentation   Videoconferencing    Videography

1    Q.   And why did you go to meet with her?

2    A.   To seek mental treatment in my case

3    against TransUnion.

4    Q.   Okay.  And what did Pam tell you?

5    A.   I basically went into -- I couldn't -- I

6    can't -- I couldn't afford -- at the time I couldn't

7    afford regular professional medical psychological

8    treatment, and I was a veteran, and I was a disabled

9    veteran, so I knew I could get free services and

10   free treatment at the V.A. mental clinic, so that's

11   why I went to the veterans mental clinic as opposed

12   to any other clinic.

13        And I told her about my credit situation

14   that I was involved in at that time, and that I

15   wanted -- I was seeking expert witnesses to testify

16   on my behalf to help prove my punitive and mental

17   damages, and she said they don't offer any kind of

18   service like that.

19   Q.   Have you ever been evaluated by a medical

20   professional as to your mental condition?

21   A.   As to my credit report or my mental

22   condition?

23   Q.   As to your emotional state.

24   A.   Can I talk to my attorney before I answer

25   that question?



NAEGELI
REPORTING
C O R P O R A T I O N

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376       509.838.6000       208.667.1163

Court Reporting     Trial Presentation    Videoconferencing    Videography

Gerald H. Eller

```
 1   answer was, "Indirectly"; the question is, "How is
 2   that?" and you said, "They turned me into a
 3   defensive, paranoid, manic individual," et cetera;
 4   it's your position that "they" is referring to
 5   someone other than TransUnion?
 6        A.   It can attribute to others with
 7   TransUnion, correct.
 8        Q.   Okay.
 9        A.   Due to the prior questions.
10        Q.   Nothing kept you from --
11        A.   Prior line of questioning.
12        Q.   You never -- but nothing kept you from
13   mentioning or accusing Experian of attributing to
14   any of your emotional distress issues?
15        A.   Well, I said in the earlier question that
16   you posed, where I said, "Yes, all of them," that
17   includes the furnishers of credit and the credit
18   reporting agencies that reported untruthful and
19   inaccurate information about me.
20        Q.   Okay.  Who else caused you to incur the
21   emotional distress that you're alleging to have
22   occurred in this case?
23             MR. SOLA:   Object, assumes facts not in
24   evidence.
25             THE WITNESS:   The furnishers of credit and
```

NAEGELI
REPORTING
CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376       509.838.6000       208.667.1163

Court Reporting      Trial Presentation      Videoconferencing      Videography

Gerald H. Eller

```
 1   the credit reporting agencies.
 2   BY MR. BEHRENDT:
 3        Q.   TransUnion?
 4        A.   TransUnion.
 5        Q.   Experian?
 6        A.   Experian.
 7        Q.   Who else?
 8        A.   I don't have the original credit reports
 9   from July or November, but the ones that produced
10   adverse accounts.
11        Q.   Other creditors?
12        A.   Furnishers of credit, correct.  Like Bank
13   One, Professional Finance, Colorado Student Loan
14   Program, they all helped contribute to stress and
15   anger and resentment, frustration, aggravation.
16        Q.   There's a number of entities out there,
17   and you would need to review your records to find
18   the names of those creditors specifically?
19        A.   Correct.
20        Q.   Is that -- okay.  So Experian --
21        A.   Jerry Willard slightly contributed to my
22   aggravation.
23        Q.   Okay.
24        A.   The incompetency of my original lawyer
25   Robert Mason helped contribute.  John Cimino has
```



**NAEGELI
REPORTING**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376        509.838.6000        208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

Gerald H. Eller

```
 1   helped contribute --

 2        Q.    Anyone else?

 3        A.    -- to my anxiety.  No, those are the main

 4   ones.  The system itself, the whole process.  I find

 5   this deposition aggravating and unnecessary.

 6        Q.    Well --

 7        A.    Well, I didn't do any -- I didn't do any

 8   of that.  I didn't initiate any of this, whether it

 9   was in 1999 or the lawsuit, in the initial process.

10        Q.    Strike that.  There's no question pending

11   right now.

12             So you named a lot of other entities

13   and -- that you believe contributed to your

14   emotional distress.  What percentage of that do you

15   attribute to Experian?

16        A.    I can't define -- I can't define a

17   percentage.

18        Q.    What's your estimate?

19        A.    A lot.

20        Q.    More than 10 percent?

21        A.    Yes.

22        Q.    Less than 20 percent?

23        A.    No.

24        Q.    Less than 30 percent?

25        A.    No.
```

**NAEGELI REPORTING CORPORATION**

**800.528.3335**
www.NaegeliReporting.com
**503.227.7123 FAX**

Portland, OR
503.227.1544

Seattle, WA
206.622.3376

Spokane, WA
509.838.6000

Coeur d'Alene, ID
208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

```
 1          Q.    Give me a -- give me an approximation.

 2          A.    I can't.

 3          Q.    Less than 50 percent?

 4          A.    No.

 5          Q.    Less than 80 percent?

 6          A.    No.

 7          Q.    Less than 90 percent?

 8          A.    No.

 9          Q.    Less than 95 percent?

10          A.    No.

11          Q.    Less than 100 percent?

12          A.    Maybe.

13          Q.    Somewhere between 95 and 100 percent --

14          A.    Maybe.

15          Q.    -- of responsibility for the emotional

16   distress you've incurred you're attributing to

17   Experian?

18          A.    Maybe.

19          Q.    So in your case with TransUnion, you

20   believed that TransUnion had only incurred -- caused

21   you to incur 5 percent, or is only responsible for 5

22   percent of the emotional distress you incurred?

23          A.    No.

24          MR. SOLA:    I'll object, misstates the

25   record.
```



**NAEGELI REPORTING CORPORATION**

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376         509.838.6000         208.667.1163

Court Reporting      Trial Presentation     Videoconferencing      Videography

CERTIFICATE

I, Gary W. Koch, do hereby certify that pursuant to the Rules of Civil Procedure, the witness named herein appeared before me at the time and place set forth in the caption herein; that at the said time and place, I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing matter; and that the foregoing transcript pages constitute a full, true and correct record of such testimony adduced and oral proceeding had and of the whole thereof.

IN WITNESS HEREOF, I have hereunto set my hand this 26TH day of SEPTEMBER, 2005.

_Gary W. Koch_

Gary W. Koch

March 04, 2009

Commission Expiration