NORMAN K.K. LAU
Attorney at Law
A Law Corporation

NORMAN K.K. LAU 1795
820 Mililani Street, Suite 701
Honolulu, Hawaii 96813
Telephone No. (808) 523-6767
Facsimile No. (808) 523-6769
Email: norm@normlau.com

ROBERT S. SOLA, P.C.
Attorney at Law

ROBERT S. SOLA (*pro hac vice, OSB No. 84454*)
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
Telephone No. (503) 295-6880
Facsimile No. (503) 291-9172
Email: rssola@msn.com

Attorneys for Plaintiff
GERALD H. ELLER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GERALD H. ELLER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> EXPERIAN INFORMATION ) <br> SOLUTIONS, INC., a foreign corporation; ) <br> TRANS UNION LLC, a foreign ) <br> corporation; and BANK ONE ) <br> CORPORATION, a foreign corporation, ) <br> ) <br> Defendants. ) <br> ) <br> _____ ) | CASE NO. CV 04-00174 DAE-KSC <br><br> DECLARATION OF LEONARD BENNETT <br><br> Hearing Date: January 9, 2005 at 9:30 a.m. <br> Magistrate Judge Kevin S. C. Chang <br> Presiding Judge David Alan Ezra |

DECLARATION OF LEONARD BENNETT

I, Leonard Bennett, state as follows:

1. I make this declaration based on my personal knowledge. I am over the age of 18 and am competent to testify as to all of the facts stated herein.

2. I am an attorney and have been licensed in Virginia since 1994 and in North Carolina since 1995. I am a shareholder and the president of Consumer Litigation Associates, P.C., a Virginia professional corporation based in Newport News, Virginia.

3. Since January 1, 2004, conservatively, I have filed and otherwise litigated at least 100 cases under the Federal Fair Credit Reporting Act. I have also been invited to speak at multiple conferences and State Bar CLE seminars on the subjects of Identity Theft and the FCRA. In 2003, I was invited to testify before Congress on the then-pending FACTA amendment of the FCRA. http://financialservices.house.gov/media/pdf/060403lb.pdf.

4. Each of the Consumer Reporting Agencies, including Equifax, Trans Union and Experian, maintain their consumer credit files and data in different formats. The information maintained by each is similar, but the formatting and the archive methods are very different. For example, Equifax maintains what it refers to as "Frozen Scans." These are monthly snapshots of what the consumer credit file looks like at that moment. It is necessary for a consumer litigant to obtain these for the relevant months in order to see and understand what was reported in a consumer's credit file in a given month. In contrast, Experian maintains this data in a printed form it calls a "Long Admin Report".

5. Experian's LONG ADMIN Report is different than its SHORT ADMIN Report in a number of important ways. The Long Admin includes the full history of every tradeline or creditor account, while the Short Admin report does not. The Long Admin also contains more complete data regarding the identifying segments (name, address, social security number, etc.) than the Short Admin.

6. Both of these type of information are critical in a mixed file case as they are necessary to understand what was reported to Experian as well as what it maintained in a file for specific periods of time.

7. Experian also maintains a document titled "Admin Handbook" which is a complete and non-technical manual which will be needed to understand both a Short and Long Admin Reports. I learned about this manual only after many previous depositions and cases in which Experian's witnesses and attorneys claimed that there was no "decoding" document which could explain how to read and understand these reports. In July 2005, I noticed a Fed. R. Civ. P. 30(b)(6) deposition of Experian in a Virginia case, Fergusen v. Experian, in the Eastern District of Virginia. Experian usually produces its professional witness, David Browne, who testified in his last deposition that almost all of his time is spent on Experian's litigation defense matters. However, this time, Experian produced a candid witness, Kathy Centanni, also a compliance manager. In response to a question about how she would understand and decode an Admin Report, she testified that she would just look at her "Admin Handbook." The attorney in that case was Mr. Morgan, with Jones Day, who I understand is also representing Experian in the present matter.

3

8. Following this deposition, in my next Experian case, <u>Beck v. Capital One, et als</u>, we requested the manual and the Long Admin report. Experian at first refused to produce either. Following this refusal, we filed and noticed a Motion to Compel. It was heard by the Federal Magistrate Judge in August 2005. Experian was ordered to produce both the Long Admin Report and the Admin Handbook. It then did so.

9. Subsequent to this case, we have requested and received both of these documents from Experian.

10. Experian has always insisted on a Protective Order to produce these documents. Over several years of litigation, we had developed a standard agreed Protective Order which was acceptable to Experian. However, earlier this year, Experian, through its regular defense firm, Jones Day, renegotiated a new Protective Order. After considerable exchanges and discussions, Experian and Jones Day agreed that the Protective Order attached hereto as Exhibit A would be the standard order between my clients and Experian. My office and Jones Day then agreed to and jointly endorsed this standard order in multiple cases, and in fact all subsequent Experian cases with a Protective Order.

11. Because the Admin Handbook and Long Admin Reports were always produced to me under a Protective Order, I am unable to be more specific or to provide any further explanation. In fact, all of the details of the Long Admin discussed herein are already available from another Long Admin Experian produced in another attorney's case without a Protective Order. However, I represent to the Court and do so under penalty pf perjury, that I believe the Long Admin report and the

4

Admin Handbook to be essential for any attorney or litigant, or the Court, to be able to track and prove the full history of an Experian credit file.

12. I am aware of various affidavits or declarations which have been tendered by Experian in other case in which its designee and management employee, Mr. Browne, claims that producing the Long Admin Report would be difficult, expensive or burdensome. Armed with such knowledge and these previous claims, I deposed Mr. Browne, in person in Los Angeles, in the Beck v. Capital One, et als. case. I asked him to state and explain the additional burden on Experian in producing such a document instead of the limited Short Admin. He then admitted that the only such burden would be that related to the larger size of the Long Admin Report. Because the Long Admin may have more detail, it is often twice or even three times as large. For example, a Short Admin may be five pages while a Long Admin may be fifteen pages. Mr. Browne testified that this would cost more in time to print, computer time or resources because of the greater amount of data printed, and electricity because of the greater time to print. He was not able to provide any more detailed explanation.

13. Mr. Browne also testified under oath that he did not have personal knowledge of the details of the generation of the various Admin reports. Instead, he would have another employee obtain such a report for him.

14. Mr. Browne also previously claimed that release of an Admin Report would expose Experian to industrial espionage from competitors. With this knowledge of his contention, I asked him at his deposition what personal knowledge he had that any other entity or person was trying to, or even desiring to, obtain and use

Experian's reports or data formats. He testified that he did not have any such knowledge.

15. In <u>Beck v. Capital One, et als.</u> Experian was also ordered to produce a full breakdown of its costs and expenses incurred in performing consumer dispute investigations. It was also ordered to produce the full incentive schedules by which its employees are paid a bonus based on the quantity of disputes they are able to process in a given time period. Experian produced the later, but the case settled before it produced the former. The production was also protected.

16. Out of over fifty cases against Experian over the last two years, it has been represented by the same law firm, Jones Day, in all but one instance. In addition, Experian has used the same four Rule 30(b)(6) witnesses in each case, David Browne, Kathy Centanni, Kim Hughes and Kira Williams. I am also aware of only two "in house" attorney decision makers at Experian. It is my understanding that these attorneys make most of the significant decisions in these cases. Finally, in most of my cases against Jones Day, in its representation of Experian, the current defense counsel was in contact with other persons who provided information to them about past defense procedures or decisions, such as form protective orders or settlement agreements, or discovery policy. I would be very surprised if the same persons making Experian's discovery production decisions in this case are not at least informed of the decisions by which other federal judges ordered production of the above documents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 20, 2005.

_____
Leonard Bennett