2004 U.S. Dist. LEXIS 8517, *             Page 1

1 of 100 DOCUMENTS

**DOMINIC JOSEPH WHARRAM, Plaintiff, vs, CREDIT SERVICES INC., EQUIFAX d/b/a EQUIFAX CREDIT INFORMATION SERVICES, INC., TRANS UNION LLC., EXPERIAN INFORMATION SOLUTIONS, INC., CSC CREDIT SERVICES INC., AND WELLS FARGO BANK, NA., Defendants.**

Civil File No. 02-CV-4853 (MJD/JGL)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

*2004 U.S. Dist. LEXIS 8517*

March 12, 2004, Decided

**DISPOSITION:** [*1] Defendants Motion for Summary Judgment denied.

**COUNSEL:** John H. Goolsby, Thomas Lyons & Associates P.A., for, and on behalf of, the Plaintiff.

Van H. Beckwith, Baker Botts, LLP, for, and on behalf of, the Defendant CSC.

Andi Kendrick Wang, Jones Day, for, and on behalf of, the Defendant Experian.

Lewis P. Perling, Kilpatrick Stockton LLP, for, and on behalf of, the Defendant Equifax.

Michael T. Browne, Meagher & Geer, P.L.L.P, for, and on behalf of, the Defendant Trans Union.

**JUDGES:** Judge Michael J. Davis, United States District Judge.

**OPINIONBY:** Michael J. Davis

**OPINION:**

### ORDER

### I. INTRODUCTION

This matter comes before the Court on defendant's, CSC Credit Services, Inc., n1 ("CSC"), Motion for Summary Judgment. Defendants Experian Information Solutions, Trans Union LLC and Equifax Information Services have joined in CSC's Motion for Summary Judgment. Wharram's complaint alleges that the defendants violated the *Fair Credit Reporting Act* when they deleted a loan from his consumer report. The Court heard oral arguments on January 7, 2004.

---

n1 CSC credit services is an affiliate of Equifax Information Services.

---

[*2]

### II. BACKGROUND

On January 5, 1999, Wharram borrowed money from Wells Fargo Bank to purchase a vehicle. On January 23, 2002, Wharram made an eight thousand dollar ($ 8,000.00) payment to Wells Fargo. In Wharram's estimation, this lump payment was an early pay off of the loan for the vehicle. Wells Fargo, however, believed that the eight thousand dollar payment did not satisfy the debt and that Wharram owed additional monies on the loan.

On July 1, 2002, Wells Fargo Bank and Wharram entered into a Settlement & Release. The pertinent portion of the release stated,

> I, Dominic J. Wharram, in consideration of a payment in the sum of $ 246.69, to Wells Fargo Bank, MN . . . hereby release and forever discharge Wells Fargo & Company . . . from any and all manner of action or actions, suits, claims . . . which I ever had . . . against Wells Fargo up to and including the date of this Release.

(Decl. of Chad M. Pinson at Ex. 2(B)). In turn, Wells Fargo "acknowledged that the loan account . . . will be reported at all credit bureaus as paid in full, with no adverse credit marks and in good standing." Id. According to Wharram, on May 22, 2002, he mailed a check for the [*3] amount of $ 246.69 to Wells Fargo. It is not clear whether Wells Fargo ever received Wharram's check.

On August 14, 2002, Wharram learned that the Wells Fargo account was adversely reported on his credit

Case 1:04-cv-00174-DAE-KSC    Document 208-13    Filed 01/13/2006    Page 2 of 3

2004 U.S. Dist. LEXIS 8517, *                                          Page 2

report by the various credit reporting agencies ("CRA"). Experian reported the account as 90 days late and as an "unpaid balance reported as a loss by the credit grantor." Likewise, Equifax reported the account as 90 days late and as a "charged off account." Trans Union noted the account was "charged off as bad debt profit and loss write-off." On September 11, 2002, Wharram disputed the status of the accounts by sending a letter to Equifax and CSC. The letter stated, "I dispute the Norwest/Wells Fargo account # 7520[****] as a charge-off and as being delinquent . . . I adamantly insist it is [sic] should never have been sent to Wells Fargo's loss recovery department; it is not a charge-off and never was delinquent."

In response to Wharram's letter, CSC sent Norwest Bank an automated dispute verification form ("ACDV") stating, subscriber comment/remark message disputed. Present status incorrect. Please verify." On September 30, 2002, Norwest responded to the ACDV by stating, "this [*4] was a misdirected ACDV-please reroute. Belongs to Wells Fargo Auto Finance." CSC concluded that the status of the Wells Fargo account was no longer verifiable and, in accordance with CSC policy, deleted the disputed Wells Fargo notation from Wharram's credit report. CSC informed Wharram, by a letter dated October 3, 2002, that "[the contested Norwest/Wells Fargo account] has been deleted from the credit file." CSC had no further contact with Wharram until Wharram served CSC with this law suit on December 20, 2002.

### III. DISCUSSION

Wharram's complaint alleges that CSC "failed to follow reasonable procedures to assure the maximum possible accuracy of a consumer report regarding [Wharram]. . . . [and] knowingly and intentionally committed an act in conscious disregard for [Wharram's] rights to the [sic] have an accurate credit report available . . . ." (Compl. at 8, PP50-51).

CSC argues for summary judgment on several grounds. First, CSC argues that the Wells Fargo loan was properly reported as delinquent because Wells Fargo never cashed Wharram's check. Minnesota law, however, suspends the obligations of the debtor when the debtor tenders a check as payment. *Minn. Stat. § 336.3-310(b)(1)* [*5] . The relevant portion of the statute states, "unless otherwise agreed . . . if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken . . . ." Id. The debt is suspended until the check is dishonored or until it is paid or certified. *Minn. Stat. § 336.3-310(b)(2)*. There are unresolved questions of fact as to whether Wells Fargo received the Wharram's check. If Wells Fargo received Wharram's check, then it cannot be said, under Minnesota law, that the loan was delinquent. Therefore, summary judgment is inappropriate.

Next CSC argues that it is entitled to summary judgment because it "complied with Wharram's request to 'remove' the Wells Fargo tradeline from his consumer report." (Def.'s Mot. for Summ. J. at 10). At the outset the Court notes, that the burden of assuring accuracy in the consumer's credit report falls to the consumer reporting agency and not with the consumer. See *15 U.S.C. § 1681e(b)*. CSC is referring to the letter that Wharram sent to dispute the unfavorable [*6] notation. In that letter, Wharram stated, "please investigate the reason or reasons why this error is on my credit report." According to CSC, removing the tradeline all together complied with Wharram's request. According to Wharram, however, this letter was never intended to result in the removal of the entire tradeline, just the errors within that tradeline. What Wharram intended by the letter is a question of fact that must be resolved by a trier of fact.

CSC also argues that Wharram may not complain about information not appearing on his consumer report. The plain language of the statute suggests otherwise. The statute states, "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure *maximum possible accuracy* of information concerning the individual about whom the report relates." *15 U.S.C. § 1681e(b)* (emphasis added). Deleting the entire tradeline did not assure the maximum possible accuracy of information relating to Wharram because it failed to convey the positive credit history Wharram established with Wells Fargo prior to the instant dispute. Maximum accuracy, under the statute, applies equally [*7] to favorable information as it does to unfavorable information. The Congressional mandate and intent underlying *15 U.S.C. § 1681e(b)* is clear, which is to "require consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner *which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy,* and proper utilization of such information . . . ." *15 U.S.C. § 1681(b)* (emphasis added).

Next CSC argues that is it entitled to judgment as a matter of law because it complied with *15 U.S.C. § 1681i(a)(5)*. That statute states,

> If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or

modify that item of information, as appropriate, based on the results of the reinvestigation

15 U.S.C. § 1681i(a)(5). This argument [*8] is not persuasive because Wharram's request for the investigation could reasonably be interpreted two ways. From Wharram's view it is a request to investigate what he perceived as an error. In that case, the only portion of Wharram's loan history that should have been deleted or modified was the portion that listed the loan status as delinquent. From CSC's view it is a request to remove "the Wells Fargo tradeline from his consumer report." (Def.'s Mot. for Summ. J. at 10). In that case, the deletion of the entire tradeline may have been appropriate. The resolution of this fact question is within the purview of the proper trier of fact. Accordingly, summary judgment is not appropriate.

CSC's final argument is that Wharram suffered no damages and therefore summary judgment is appropriate. The Court disagrees. At the least, Wharram may be entitled to punitive damages because CSC admits that it was its policy "to suppress the disputed tradeline from the consumer's report." (Def.'s Mot. for Summ. J. at 5). A trier of fact could reasonably find that CSC intentionally suppressed the tradeline and that CSC was conscious that its act impinged on the rights of Wharram. Punitive damages are [*9] permitted in the absence of actual damages and therefore summary judgment based on the damages argument is not proper. *Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998)* (citations omitted).

**IT IS HEREBY ORDERED that:**

1. Defendants Motion for Summary Judgment [Dock. No. 46] is **DENIED.**

Dated: March 12, 2004

    Judge Michael J. Davis

    United States District Court